No. 14-1204

# In the
# United States Court of Appeals
# For the Seventh Circuit

CRAIG A. CHILDRESS,

*Plaintiff-Appellant,*

v.

ROGER E. WALKER, JR., *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court
Southern District of Illinois
Case No. 3:12-cv-01230-JPG
The Honorable J. Phil Gilbert, District Judge

———————————

**BRIEF AND SHORT APPENDIX
OF PLAINTIFF-APPELLANT CRAIG A. CHILDRESS**

———————————

Scott J. Fisher
Eric Y. Choi
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Phone: (312) 269-8000

*Attorneys for Plaintiff-Appellant*

# **CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Circuit Rule 26.1, Plaintiff-Appellant Craig A.

Childress hereby submits the following disclosure statement:

1.      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

**Answer:**  Craig A. Childress

2.      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Answer:**  Neal, Gerber & Eisenberg LLP

3.      If the party or amicus is a corporation:

    i)      Identify all its parent corporations, if any; and

**Answer:**  The party, Mr. Childress, is an individual.

    ii)      list any publicly held company that owns 10% or more of the party's or amicus' stock

**Answer:**  N/A

Date: August 20, 2014

                          /s/  Scott J. Fisher
                                Scott J. Fisher

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...............................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................... 1

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES............................................................... 3

STATEMENT OF THE CASE ................................................................. 4

    A.   Childress's Efforts at Rehabilitation in Advance of His
Release................................................................................... 5

    B.   Childress is "Released" for 15 Days ...................................... 6

    C.   The Complaint and the District Court's First Opinion ........ 8

    D.   Childress's Motion and the District Court's Second
Opinion ............................................................................... 12

SUMMARY OF ARGUMENT ............................................................... 15

ARGUMENT ......................................................................................... 21

    I.   The District Court Wrongly Determined that Childress
Failed to State a Claim Under Section 1983 ...................... 21

        A.   Childress Stated a Claim for Violation of His
Fourteenth Amendment Rights to Due Process......... 23

            1.   Childress Sufficiently Alleged a Liberty
Interest in His Release ...................................... 23

            2.   Childress Sufficiently Alleged that the
Administrators and Personnel of BMRCC
Violated His Substantive Due Process
Rights ................................................................ 26

            3.   Childress Sufficiently Alleged that the
Administrators and Personnel of BMRCC
Violated His Procedural Due Process Rights .... 33

# TABLE OF CONTENTS
(continued)

**Page**

B.    Childress Stated a Claim for Violation of His Eighth Amendment Rights .......................................... 36

II.    The District Court Erred by Dismissing the Complaint With Prejudice.................................................... 37

III.    The District Court Abused Its Discretion by Neglecting to Consider Childress's Motions to Recruit Counsel ........... 40

IV.    A Person Detained Under the Sexually Violent Persons Commitment Act is Not A "Prisoner" for Purposes of the Prison Litigation Reform Act ........................................ 42

CONCLUSION .......................................................... 52

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS........................ 53

CERTIFICATE OF SERVICE................................................ 54

CIRCUIT RULE 30(d) CERTIFICATION AND INDEX OF SHORT APPENDIX ............................................................. 55

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agnew v. NCAA,*
  683 F.3d 328 (7th Cir. 2012)...........................................................37

*Agyeman v. INS,*
  296 F.3d 871 (9th Cir. 2002)...........................................................49

*Alexander v. Ramsey,*
  539 F.2d 25 (9th Cir. 1976)............................................................41

*Anderson-El v. Shade,*
  No. 96-1577, 1997 U.S. App. LEXIS 10101
  (7th Cir. May 1, 1997)....................................................................25

*Armstrong v. Squadrito,*
  152 F.3d 564 (7th Cir. 1998)..................................................passim

*Arnett v. Webster,*
  658 F.3d 742 (7th Cir. 2011)...........................................21, 27, 30

*Bracey v. Grondin,*
  712 F.3d 1012 (7th Cir. 2013).........................................................40

*Brown v. Randle,*
  No. 11 C 50193, 2014 U.S. Dist. LEXIS 76532
  (N.D. Ill. June 5, 2014) ............................................................25, 34

*Burke v. Johnston,*
  452 F.3d 665 (7th Cir. 2006)..........................................................36

*CFTC v. Worth Bullion Group,*
  717 F.3d 545 (7th Cir. 2013)..........................................................43

*Cohen v. Clemens,*
  321 Fed. Appx. 739 (10th Cir. 2009)..............................................49

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)..................................................................26

*Daniels v. Williams*,
    474 U.S. 327 (1986)..................................................................23

*DeWitt v. Corizon*,
    No. 13-2930, 2014 U.S. App. LEXIS 14236
    (7th Cir. July 25, 2014) ..........................................................41

*Domka v. Portage County*,
    523 F.3d 776 (7th Cir. 2008)...................................................24

*Eades v. Thompson*,
    823 F.2d 1055 (7th Cir. 1987)................................................38

*Ehrlich v. Mantzke*,
    No. 01 C 7449, 2002 U.S. Dist. LEXIS 3032
    (N.D. Ill. Feb. 25, 2002) .........................................................47

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...................................................................21

*Frey v. EPA*,
    270 F.3d 1129 (7th Cir. 2001).................................................38

*Grandberry v. Smith*,
    754 F.3d 425 (7th Cir. 2014)..................................................35

*Grayson v. Mayview State Hosp.*,
    293 F.3d 103 (3d Cir. 2002) ...................................................39

*In re Derry*,
    393 Ill. App. 3d 482, 913 N.E.2d 604 (Ill. App. Ct. 2009) ..................44

*In re Detention of Anders*,
    304 Ill. App. 3d 117, 710 N.E.2d 475 (Ill. App. Ct. 1999) ..................45

*In re Detention of Hardin,*
  391 Ill. App. 3d 211, 907 N.E.2d 914
  (Ill. App. Ct. 2009), *aff'd*, 238 Ill. 2d 33,
  932 N.E.2d 1016 (Ill. 2010) ...................................................... 44, 45, 48

*Johnson v. Daley,*
  339 F.3d 582 (7th Cir. 2003) ............................................................ 43

*Johnson v. Snyder,*
  444 F.3d 579 (7th Cir. 2006) ............................................................ 27

*Jones v. Chicago,*
  856 F.2d 985 (7th Cir. 1988) ....................................................... 31, 32

*Kalinkowski v. Bond,*
  358 F.3d 978 (7th Cir. 2004) ............................................................ 50

*Kansas v. Hendricks,*
  521 U.S. 346 (1997) ...................................................................... 44

*Kernats v. O'Sullivan,*
  35 F.3d 1171 (7th Cir. 1994) ............................................................ 32

*Kolocotronis v. Morgan,*
  247 F.3d 726 (8th Cir. 2001) ............................................................ 49

*LaFontant v. INS,*
  135 F.3d 158 (D.C. Cir. 1998) ......................................................... 49

*Lane v. Williams,*
  689 F.3d 879 (7th Cir. 2012) ................................................. 10, 44, 46

*Luevano v. Wal-Mart Stores, Inc.,*
  722 F.3d 1014 (7th Cir. 2013) ..................................................... 21, 38

*Markadonatos v. Vill. of Woodridge,*
  739 F.3d 984 (7th Cir. 2014) ............................................................ 33

*Mathews v. Eldridge,*
  424 U.S. 319 (1976) ...................................................................... 33

*Merritt v. Faulkner,*
  697 F.2d 761 (7th Cir. 1983)................................................................ 41

*Merryfield v. Jordan,*
  584 F.3d 923 (10th Cir. 2009)............................................................. 49

*Michau v. Charleston County,*
  434 F.3d 725 (4th Cir. 2006)......................................................... 48, 49

*Minix v. Canarecci,*
  597 F.3d 824 (7th Cir. 2010)............................................................... 27

*Montgomery v. Anderson,*
  262 F.3d 641 (7th Cir. 2001).................................................... 24, 25, 34

*Morrissey v. Brewer,*
  408 U.S. 471 (1972)............................................................................ 24

*Navejar v. Iyiola,*
  718 F.3d 692 (7th Cir. 2013)............................................................... 40

*Ojo v. INS,*
  106 F.3d 680 (5th Cir. 1997)............................................................... 49

*Page v. Torrey,*
  201 F.3d 1136 (9th Cir. 2000)....................................................... 43, 49

*People v. Masterson,*
  2011 IL 110072, 958 N.E.2d 686 (Ill. 2011) ........................... 44, 45, 50

*People v. Seward,*
  406 Ill. App. 3d 82, 940 N.E.2d 140 (Ill App. Ct. 2010) .................... 46

*Perkins v. Hedricks,*
  340 F.3d 582 (8th Cir. 2003).............................................................. 49

*Pruitt v. Mote,*
  503 F.3d 647 (7th Cir. 2007)........................................................ 40, 41

*Roe v. Elyea,*
  631 F.3d 843 (7th Cir. 2011)............................................................... 27

*Santiago v. Walls,*
  599 F.3d 749 (7th Cir. 2010)......................................................40, 42

*Savory v. Lyons,*
  469 F.3d 667 (7th Cir. 2006)................................................................22

*Schepers v. Comm'r,*
  691 F.3d 909 (7th Cir. 2012)...............................................................33

*Schloss v. Ashby,*
  No. 11-CV-3337, 2011 U.S. Dist. LEXIS 116855
  (C.D. Ill. Oct. 11, 2011) .....................................................................47

*Sigsworth v. City of Aurora,*
  487 F.3d 506 (7th Cir. 2007)..................................................................2

*Slade v. Bd. of Sch. Dirs. of Milwaukee,*
  702 F.3d 1027 (7th Cir. 2012)..............................................................26

*Swofford v. Mandrell,*
  969 F.2d 547 (7th Cir. 1992)...............................................................41

*Tran v. Kriz,*
  No. 08-C-228, 2008 U.S. Dist. LEXIS 83269
  (E.D. Wis. Mar. 21, 2008) ...................................................................48

*United States ex rel. Little v. Graber,*
  No. 03 C 4917, 2003 U.S. Dist. LEXIS 22307
  (N.D. Ill. Dec. 5, 2003) .................................................................24, 34

*United States v. Comstock,*
  560 U.S. 126 (2010).............................................................................48

*Varner v. Monohan,*
  460 F.3d 861 (7th Cir. 2006).................................................................50

*West v. Macht,*
  986 F. Supp. 1141 (W.D. Wis. 1997)...................................................48

*White v. Martin,*
No. 13-cv-00646-JPG, 2014 U.S. Dist. LEXIS 61418
(S.D. Ill. May 1, 2014) ............................................................ 28, 35, 36

*Wilkinson v. Austin,*
545 U.S. 209 (2005) ........................................................................ 24

*Zinermon v. Burch,*
494 U.S. 113 (1990) ........................................................................ 23

## STATUTES

725 ILCS 205/1.01 *et seq* ........................................................................ 52

725 ILCS 207/1 *et seq* .................................................................... passim

730 ILCS 5/3-3-7 ...................................................................... 6, 28

28 U.S.C. § 1915 ........................................................................ passim

28 U.S.C. § 1915A ...................................................................... passim

28 U.S.C. § 1291 .............................................................................. 2

28 U.S.C. § 1331 .............................................................................. 1

28 U.S.C. § 1343 .............................................................................. 1

42 U.S.C. § 1983 ........................................................................ passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 12 ........................................................................ 21

Fed. R. Civ. P. 15 .................................................................... 38, 39

FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT,
§ 7.17 (2009 rev.) .................................................................... 32

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to Circuit Rule 34(f), Plaintiff-Appellant Craig A. Childress respectfully requests oral argument and believes that oral argument will assist the Court in its review of the issues presented.

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Craig A. Childress filed a *pro se* complaint in the United States District Court for the Southern District of Illinois asserting claims under 42 U.S.C. § 1983. (R. 4-59.)[1] The district court's jurisdiction was based on the existence of a federal question under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

On February 20, 2013, District Judge J. Phil Gilbert dismissed with prejudice the complaint for failure to state a claim under the Prison Litigation Reform Act, 28 U.S.C. § 1915A. (Appx. 1-5.) A final judgment was entered the same day. (Appx. 6.)

On March 1, 2013, Childress timely filed a motion for reconsideration and seeking to alter, set aside, and vacate the judgment. (R. 94-111.)

---

[1]     Citations to the Record transmitted to this Court from the Deputy Clerk for the United States District Court for the Southern District of Illinois shall be to the page number and cited as "R. __." Citations to the Circuit Rule 30 Appendix shall be to the page number and cited as "Appx. __." Citations to materials filed with this Court shall be to the docket number and cited as "Dkt. __."

On January 21, 2014, the district court granted in part and denied in part the motion. (R. 118-25.) The district court affirmed the dismissal with prejudice of the complaint for failure to state a claim. (R. 124.) An amended final judgment was entered the same day. (Appx. 15.)

On January 28, 2014, the district court entered an order striking the January 21, 2014 memorandum opinion. (R. 127.) The court filed a substantively identical, amended memorandum opinion on January 28, 2014. (Appx. 7-14.) The only change was to correct the citation to *Sigsworth v. City of Aurora*, 487 F.3d 506 (7th Cir. 2007), on page 6 of the January 21, 2014 opinion. (R. 123.)

Childress timely filed a notice of appeal on January 29, 2014. (R. 136.) This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 because the appeal is from a final judgment of the United States District Court for the Southern District of Illinois.

## STATEMENT OF THE ISSUES

1.     Did Childress state a claim that the warden or other prison administrators maintained a policy that unconstitutionally jeopardized the freedom of persons released from prison on parole or mandatory release?

2.     Was Childress entitled to notice or an opportunity to file an amended complaint before the district court dismissed the action with prejudice?

3.     Was the district court obligated to consider Childress's motions to recruit counsel?

4.     Is a person detained under the Illinois Sexually Violent Persons Commitment Act, *see* 725 ILCS 207/1 to 207/99, a "prisoner" for purposes of the screening requirement of 28 U.S.C. § 1915A(a) and the three-strikes provision contained in 28 U.S.C. § 1915(g)?

## STATEMENT OF THE CASE

Plaintiff-Appellant Craig A. Childress was an inmate at the Big Muddy River Correctional Center in Ina, Illinois ("BMRCC") from 2005 to August 2010. (R. 18-19, 39.) When Childress departed BMRCC on mandatory supervised release on August 19, 2010, he received his exit property. (R. 48-49.) The exit property included an unmarked, sealed envelope and was carried out of BMRCC by an acquaintance of Childress. (R. 110.) Unbeknownst to Childress, who is wheelchair bound, the sealed envelope contained a computer disk and was placed in Childress's property pursuant to the policy of the administrators and personnel of BMRCC. (R. 48-50.)

Just two weeks later, Childress was taken back into custody on the claim that he violated the terms of his mandatory supervised release by possessing "computer related material," namely Childress possessed the still sealed, unmarked envelope from BMRCC. (R. 49.) At that time, Childress was at least the third inmate re-incarcerated after his release as a result of the policy of the BMRCC administrators and personnel to place an unmarked, sealed envelope with a computer disk

in the exit property of inmates departing on mandatory supervised release. (R. 49.)

## A. Childress's Efforts at Rehabilitation in Advance of His Release.

While in jail, Childress planned for his release through rehabilitation programs. (R. 39.) As part of that effort, Childress attended the Lifestyle Redirection Program at BMRCC. (R. 30-31, 39, 48.) The Lifestyle Redirection Program was a three-week certificate program that provided life, financial, and professional skills. (*Id.*) The program was intended to assist with reentry in the community and finding employment. (R. 30-31.) Defendant-Appellee Danalyn Wilson was the instructor for the program. (R. 48.)

Apparently to further the program's goal of job preparedness, the "policy, practice, and procedure" of the Lifestyle Redirection Program of BMRCC was to provide each participant with a hardcopy of the participant's resume and cover letter and to forward to the property room of BMRCC a computer disk with the resume and cover letter saved to it. (R. 48.) Defendant-Appellee Ty Bates, the former assistant warden of programs and subsequently the warden of BMRCC, was fully familiar with this "policy, practice, and procedure," (R. 49-50), as was

Defendant-Appellee William Peyton, the assistant warden of programs
at BMRCC, (R. 47-48, 50), Defendant-Appellee Angela Winsor, the
clinical services supervisor of BMRCC, (R. 47, 50), and Defendant-
Appellee R.G. Eubanks, the lifestyle redirection coordinator of BMRCC.
(*Id.*)

On August 10, 2010, days before he was set to be released,
Childress successfully completed the Lifestyle Redirection Program.
(R. 30.) Pursuant to the policies of the administration of BMRCC and
with the knowledge and approval of Bates, Peyton, Winsor, and
Eubanks, (R. 49-50), Instructor Wilson forwarded the computer disk to
the BMRCC property room for storage pending Childress's release.
(R. 48.)

## B. Childress is "Released" for 15 Days.

Childress was granted mandatory supervised release and, on
August 19, 2010, purportedly released from custody. (R. 48-49.) The
general conditions of Childress's MSR were known to at least Wilson,
Bates, Peyton, Winsor, and Eubanks. (R. 47, 49-50; *see* 730 ILCS 5/3-3-
7.) Upon his release from BMRCC, Childress was provided with his
personal exit property, which included a sealed envelope containing the

computer disk. (R. 48-49.) The sealed envelope was benign and bore no

markings indicating or suggesting that it enclosed a computer disk:

R.L.C.

K69526

Childress, Craig

MSR 8-19-10

(R. 26.) There is no indication of any markings on the back of the

envelope. The property was carried out of BMRCC by Michael Sigwerth,

an acquaintance of Childress. (R. 110.) Childress went to his

designated, pre-approved parole site residence, (R. 49), which had

required extraordinary expense to obtain. (R. 20, 50, 106, 110.)

Fifteen days later, on September 3, 2010, Childress's residence

was inspected as a condition of his MSR. (R. 49.) Agents of the Illinois

Department of Corrections conducted a search of Childress's immediate

living area and identified "the still unopened envelope containing the

computer disk [Childress] had obtained from . . . IDOC staff through the

Lifestyle Redirection Program at the BMRCC." (*Id.*) The IDOC agents

unsealed the envelope and took Childress into custody for violation of

the conditions of the MSR. (R. 49, 110.) In particular, the agents charged Childress with "possession of computer related items." (R. 49.) Sigwerth was present at the time and witnessed the events. (R. 110.)

Childress was taken initially to Statesville Correctional Center, transferred to Shawnee Correctional Center on September 20, 2010, and eventually transferred back to BMRCC on November 16, 2010. (R. 49.)

When Childress arrived at BMRCC "at around 5:00 p.m.," he was "greeted by the then Assistant Warden of Programs Ty Bates." (R. 49.) At that time, Bates admitted to Childress that Bates and the other administrators at BMRCC were aware that, on at least two prior occasions, inmates similarly situated to Childress had also been re-incarcerated for violating the conditions of their MSR by unknowingly possessing the computer disk from the BMRCC Lifestyle Redirection Program. (R. 49-50.)

## C.    The Complaint and the District Court's First Opinion.

On December 3, 2012, Childress filed a *pro se* eight-count complaint in the United States District Court for the Southern District of Illinois against Defendants-Appellees S.A. Godinez, Gladyse Taylor,

Michael Randle, Roger Walker, John Evans, Robert Hilliard, William Peyton, Ty Bates, Angela Winsor, R.G. Eubanks, Rend Lake College Board of Trustees, and Danalyn Wilson (collectively, the "Defendants"), alleging constitutional violations under 42 U.S.C. § 1983. (R. 4-59.) In essence, Childress alleged that the Defendants knowingly, or through deliberate indifference, jeopardized his freedom by placing in his property a computer disk that, immediately upon his release, put Childress in violation of the terms of his release. (R. 48-50.)

Count I asserts a claim under Section 1983 for "Deliberate Indifference" in violation of the First Amendment, the Eighth Amendment, and the Fourteenth Amendment against S.A. Godinez, Gladyse Taylor, Michael Randle, and Roger Walker, each of whom is alleged to have been, at one point, a Director of the Illinois Department of Corrections. (R. 45-46, 52.) Counts II through VI assert similar claims under Section 1983 against John Evans, Robert Hilliard, William Peyton, and Ty Bates, each of whom is alleged to have been, at one point, a warden at BMRCC, (R. 46-47, 52-53); Angela Winsor, the clinical services supervisor at BMRCC, (R. 47, 53-54); R.G. Eubanks, the lifestyle redirection coordinator at BMRCC, (R. 47, 54-55); Danalyn

Wilson, the instructor of the Lifestyle Redirection Program, the Rend Lake College Board of Trustees, (R. 47, 55-56); and unnamed defendants whose identity Childress alleges he could not ascertain. (R. 48, 56.) Count VII asserts similar claims against all of the named Defendants. (R. 57.) Count VIII asserts that the Defendants conspired to violate Childress's constitutional rights. (R. 57-58.) The complaint alleges that each of the Defendants acted under color of state law as it relates to the conduct at issue. (R. 48, 57-58.)

On December 3, 2012, Childress filed motions for leave to proceed *in forma pauperis*, (R. 60-63), and to appoint counsel. (R. 64-77.) He filed another motion to appoint counsel on December 10, 2012. (R. 80-84.) The motion to proceed *in forma pauperis* was granted. (R. 85.) The motions to appoint counsel were never considered.

When Childress filed his complaint, he "was a resident of the Treatment and Detention Facilities in Rushville, Illinois, which is an institution administered by the Illinois Department of Human Services to house civil detainees held pursuant to the Sexually Violent Persons Commitment Act." (R. 119; *see also Lane v. Williams*, 689 F.3d 879, 880-81 (7th Cir. 2012) (those detained or civilly committed pursuant to the

Sexually Violent Persons Commitment Act are housed at the Rushville Treatment and Detention Center).) At that time, Childress was "fully discharged," was not on parole, had no pending criminal charges or warrants, and was a registered voter in Schuyler County, Illinois. (R. 94, 104.)

On February 20, 2013, District Judge J. Phil Gilbert entered an order dismissing Childress's complaint with prejudice for failure to state a claim and denying all pending motions as moot. (Appx. 1-5.) The district court believed that, pursuant to 28 U.S.C. § 1915A, the court was "required to conduct a prompt threshold review of the Complaint." (Appx. 2.) As an initial matter, the district court concluded that "[a]t most, plaintiff's allegations indicate that the placement of the computer disk in his property could have been a negligent act. A defendant can never be held liable under section 1983 for negligence." (Appx. 3.) The district court further concluded that it was Childress's "responsibility to know and to comply with all conditions of his parole" and that he had "exclusive control over his property items and could have easily found the computer disk." (Appx. 3.) While the district court characterized as "unfortunate" the circumstances leading to Childress's re-incarceration,

the court concluded that "none of the defendants' actions amounted to a violation of plaintiff's constitutional rights." (Appx. 4.) The district court nowhere suggested that Childress's claims were frivolous or malicious, but rather only that Childress failed to state a claim upon which relief may be granted. (Appx. 1-5.)

The district court further concluded that the dismissal of Childress's complaint "shall count as one of his allotted 'strikes' under the provisions of 28 U.S.C. § 1915(g)." (Appx. 5.) On the same date, the clerk of the court entered judgment accordingly. (Appx. 6.)

## D.    Childress's Motion and the District Court's Second Opinion.

On March 1, 2013, Childress promptly filed a motion for reconsideration and seeking to alter, set aside, and vacate the judgment. (R. 94-111.) First, Childress argued that he is not a prisoner and the action should not have been subject to the requirements of the Prison Litigation Reform Act. (R. 94-96.) Second, Childress argued that the claims were improperly dismissed and that, at the very least, leave to amend should have been afforded. (R. 96-102.)

More than 10 months later, on January 21, 2014, the district court granted in part and denied in part Childress's motion. (R. 118-125.) The

district court accepted Childress's argument that he was not a "prisoner" and, therefore, was not subject to the Prison Litigation Reform Act. (Appx. 8-10.) The district court was persuaded that an individual detained under the Sexually Violent Persons Commitment Act, *see* 725 ILCS 207/1 to 207/99, is not a "prisoner" under the Prison Litigation Reform Act because he "is not currently serving a sentence resulting from a criminal conviction, nor is he facing pending charges, nor is he being held for a parole violation." (Appx. 9.) The district court nevertheless concluded that, as an *in forma pauperis* claimant, Childress was subject to the gate-keeping function of 28 U.S.C. § 1915(e)(2). (Appx. 10.)

The district court affirmed its decision on the merits. (Appx. 12-13.) As a result, the district court directed the clerk to enter an amended judgment to reflect that the dismissal of the action was pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that the dismissal did not count as a strike. (Appx. 13.) Once again, the district court did not anywhere suggest that Childress's claims were frivolous or malicious. And, the district court's opinion does not reflect any consideration of Childress's request for leave to amend. (*See* R. 102.) On January 21,

2014, the clerk of court entered an amended judgment consistent with the district court's memorandum opinion. (Appx. 15.)

On January 29, 2014, Childress timely filed a notice of appeal, (R. 136), and on February 26, 2014, Childress submitted to this Court his merits brief. (Dkt. 7.) On April 14, 2014, this Court entered an Order (a) concluding that new briefs and oral argument would benefit the Court and that counsel should be recruited for Childress, (b) inviting the Attorney General of the State of Illinois to file a responsive brief in this appeal, and (c) directing the parties to address two particular issues (*i.e.*, Issue Nos. 1 and 4 at page 3, *supra*). (Dkt. 10.) On May 22, 2014, this Court entered an order appointing the undersigned counsel to represent Childress in this appeal. (Dkt. 11.)

## SUMMARY OF ARGUMENT

When Plaintiff-Appellant Craig A. Childress left on mandatory supervised release, the administrators and personnel at BMRCC knew that Childress was in violation of his mandatory supervised release and in jeopardy of immediately being returned to jail. They made no effort whatsoever to alert Childress to the risk or to mitigate it. The absolute disregard for Childress's freedom violates the Constitution, and Childress adequately pleaded facts sufficient to state a claim.

First, the district court erred in dismissing the complaint pursuant to the gate-keeping function of 28 U.S.C. § 1915(e)(2)(B). As a threshold matter, the district court failed to construe the complaint liberally and to view the allegations of the complaint in the light most favorable to Childress, a *pro se* plaintiff.

Moreover, irrespective of the lens through which one views the complaint, Childress stated a claim under Section 1983 for violations of substantive due process.  To be sure, Childress alleged a liberty interest protected by the Fourteenth Amendment – the grant of mandatory supervised release and the actual "release" from custody – and adequately alleged that the administration and personnel at BMRCC

were deliberately indifferent to that liberty interest. In particular,
Childress alleged that the administrators and personnel of BMRCC
maintained a policy and practice of placing a concealed computer disk in
the exit property of parolees. The complaint asserts that the
administration and personnel at BMRCC did so knowing that
possession of computer-related materials violates the conditions of the
parolees' mandatory supervised release and immediately jeopardizes
their freedom. Childress verified the complaint and supported his claim
with a stark admission from a warden that, before Childress had his
freedom stripped, the warden and other administrators were conscious
of similar instances when parolees were re-incarcerated solely for
possessing the computer disk which the BMRCC administrators and
personnel placed in their exit property.

For the same reasons, the complaint stated a claim under Section
1983 for violations of procedural due process. Childress alleged a liberty
interest that could not be deprived absent fair process, and the risk of
deprivation was almost certain, as there were no safeguards in place. As
noted, the administration and personnel at BMRCC were aware that,
on at least two prior occasions, similarly situated individuals were

deprived of their freedom under the same circumstances. Furthermore, there is no legitimate government interest in continuing the BMRCC policy and there are virtually no fiscal or administrative burdens to rather basic procedural safeguards which would prevent these "unfortunate" circumstances.

Based on the same verified facts, Childress also stated a claim under Section 1983 for violations of his Eighth Amendment rights. Childress alleged sufficient facts that the administrators and staff at BMRCC acted with deliberate indifference to the risk that their actions would deprive Childress of his freedom after his custodial sentence had ended.

In dismissing the complaint, the lower court neglected to consider whether the policy and practice of the BMRCC personnel was sufficient to state a claim, and instead excused their actions as mere "negligence." Meanwhile, the district court admonished Childress for failing to find the computer disk without considering, as it was required, whether the BMRCC administrators and personnel could have – with minimal process – easily prevented the circumstances in the first instance or

whether one might reasonably infer that they did not want to prevent the circumstances at all.

Second, even if the district court correctly concluded that the complaint failed to state a claim, it should have afforded Childress an opportunity to amend his complaint. Childress, as an *in forma pauperis* plaintiff, should have been granted the same opportunity as a fee-paying plaintiff to amend his complaint at least once. Here, not only did the district court disregard Childress's request for leave to amend, but the district court nowhere intimated that Childress's allegations were frivolous or malicious. Justice required the court to afford leave to amend, and the district court's decision to dismiss the complaint with prejudice raises a serious question about fair access to the courts.

Third, the district court abused its discretion by failing even to acknowledge Childress's motions for the appointment of counsel. The district court's failure to consider the request for counsel is reversible error; the district court did not apply the now-familiar legal standard this Court requires. And, the result in this case would likely have been different if the district court would have recruited counsel. Childress's claims are indisputably complex, and counsel would have, among other

things, developed further the depths of the policy and practice of BMRCC and the prior instances where the liberty of parolees was disregarded. The serious question about fair access to the courts is amplified when the district court's decision not to afford leave is coupled with its disregard for the requests for counsel.

Finally, the district court correctly concluded that a person detained under the Sexually Violent Persons Commitment Act ("SVPCA"), *see* 725 ILCS 207/1 to 207/99, is not a "prisoner" for purposes of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(h) and 28 U.S.C. § 1915A(a). A "prisoner" is defined in the PLRA as a detained person "who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c); *see* 28 U.S.C. § 1915(h). However, the SVPCA is expressly civil in nature, is not punitive, and is not directed at those with any current criminal charges against them or those serving criminal sentences. Indeed, a person detained under the SVPCA is not detained for past conduct, but rather with the goal of rehabilitation and release. Because Childress – at the time the

complaint was filed – had fully discharged his sentence, was not on parole, and had no pending criminal charges or warrants, he was not a "prisoner" for purposes of the PLRA.

The judgment of the district court should be reversed and the case should be remanded with instructions to recruit pro bono counsel.

## ARGUMENT

### I.   The District Court Wrongly Determined that Childress Failed to State a Claim Under Section 1983.

The district court erred in dismissing Childress's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Dismissals under Section 1915(e)(2)(B)(ii) are reviewed *de novo*. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013). In doing so, the Court applies the familiar standard for motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Luevano*, 722 F.3d at 1027 (*quoting Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

While the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Arnett*, 658 F.3d at 751, the Court "must however construe *pro se* complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers." *Id.* (*citing Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). *See also Luevano*, 722 F.3d at 1027 ("the pleading

standards for *pro se* plaintiffs are considerably relaxed, even in the wake of [*Twombly*]" (internal citations omitted)).

In this case, the complaint alleged sufficient facts to state a claim under 42 U.S.C. §1983. To state a claim under Section 1983, a plaintiff must allege that a defendant: (1) deprived the plaintiff of a federal constitutional right, and (2) acted under color of state law in depriving the plaintiff of that right. 42 U.S.C. § 1983; *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). First, Childress stated a claim that the administrators and staff at BMRCC violated his Fourteenth Amendment rights to due process by maintaining a policy or practice that immediately jeopardized, and ultimately deprived him of, his freedom. Second, Childress stated a claim that the administrators and staff at BMRCC violated his Eighth Amendment rights by acting with deliberate indifference to the risk that their actions would deprive Childress of his freedom after his custodial sentence had ended.[2]

The judgment should be reversed.

---

[2]     There is no suggestion that Childress did not adequately allege that the administrators and personnel of BMRCC acted under color of state law when they deprived him of his freedom. (R. 48, 57-58.)

### A.  Childress Stated a Claim for Violation of His Fourteenth Amendment Rights to Due Process.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause guarantees "fair procedures" (*i.e.*, "process") when state action deprives an individual of life, liberty, or property, and also contains a substantive component that "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (*quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Both components of the due process protections require a life, liberty, or property interest.  *Zinermon*, 494 U.S. at 125; *Armstrong v. Squadrito*, 152 F.3d 564, 570-71 (7th Cir. 1998). In this case, Childress sufficiently alleged a liberty interest and the deprivation of that interest in violation of both his substantive and procedural due process rights.

### 1.  Childress Sufficiently Alleged a Liberty Interest in His Release.

Once the State granted Childress mandatory supervised release, Childress possessed a liberty interest that was subject to the due process protections of the Fourteenth Amendment.

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. . . . [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

A parolee's liberty interest may arise "from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). As to the latter, an expectation of liberty arises once a prisoner has been released. *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001) ("[P]arole is a form of statutory liberty once the prisoner has been released."); *Domka v. Portage County*, 523 F.3d 776, 781 (7th Cir. 2008) ("[A]n inmate on parole has a liberty interest in retaining that status."). Indeed, even the "promise" of release gives rise to a cognizable liberty interest. *Montgomery*, 262 F.3d at 644 (noting that, once the "state has made a promise" of early release on parole, a protected "synthetic liberty" interest arises); *United States ex rel. Little v. Graber*, No. 03 C 4917, 2003 U.S. Dist. LEXIS 22307, at *10-11 (N.D. Ill. Dec. 5, 2003)

("[P]arole, once granted, represents a liberty interest protected by the Due Process Clause[.]"); *Brown v. Randle*, No. 11 C 50193, 2014 U.S. Dist. LEXIS 76532, at *13 (N.D. Ill. June 5, 2014) ("Once granted supervised release . . . a more limited liberty interest attaches to the parolee's freedom."); *but cf. Anderson-El v. Shade*, No. 96-1577, 1997 U.S. App. LEXIS 10101, at *6 (7th Cir. May 1, 1997) (noting that whether a liberty interest arises when parole is granted or when a prisoner is actually released is an "open question").

Here, Childress was granted MSR and, on August 19, 2010, purportedly released. Both of these occurrences – the grant of MSR and the actual "release" – independently gave rise to a liberty interest in maintaining that status and were subject to the due process protections of the Fourteenth Amendment. *See Montgomery*, 262 F.3d at 644. The administrators and personnel of BMRCC, however, knowingly jeopardized and deprived Childress of that liberty in violation of both his substantive and procedural due process rights.

### 2. Childress Sufficiently Alleged that the Administrators and Personnel of BMRCC Violated His Substantive Due Process Rights.

Childress alleged sufficient facts to state a claim that the administrators and personnel of BMRCC violated his substantive due process rights by acting with deliberate indifference to his freedom.

Substantive due process challenges concerning executive conduct are governed by the "shocks the conscience" standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *id.* at 846, 847 n.8 (distinguishing challenges to legislative action and the "reasonably related to legitimate state interest" standard). The "shocks the conscience" standard differentiates between official conduct where "deliberation is practical" and where it is not practical. *Lewis*, 523 U.S. at 851-52. Deliberation is practical where the actor can make "unhurried judgments upon the chance for repeated reflection largely uncomplicated by the pulls of competing obligations." *Id.* Deliberation is not practical where, for example, the actor responds to a violent disturbance such as a riot or a high-speed chase. *Id.* Where the opportunity to deliberate is present, mere deliberate indifference "shocks the conscience." *Id.* at 853; *see also Slade v. Bd. of Sch. Dirs. of*

*Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012) (questioning the utility of the "shock the conscience" standard and suggesting that "recklessness" would be a more effective formulation).

Deliberate indifference is a "subjective standard" and is established when a plaintiff alleges "that the defendant 'acted with a sufficiently culpable state of mind,' something akin to recklessness." *Arnett*, 658 F.3d at 751 (*quoting Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)); *see Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010) ("[W]e apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment."). "A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm . . . and either acts or fails to act in disregard of that risk." *Arnett*, 658 F.3d at 751(*citing Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). To that end, a "deliberate choice to avoid an obvious danger . . . is actionable under 42 U.S.C. § 1983 if the choice results in harm to a protected interest, even though the defendant obtusely lacks actual knowledge of the danger." *Armstrong*, 152 F.3d at 578.

For example, evidence that a jail official prolonged the detention of a pre-trial detainee because he refused to consider the detainee's repeated complaints demonstrated deliberate indifference to the detainee's freedom. *Id.* at 579-81. Likewise, allegations that prison officials had, in effect, forced a plaintiff to violate parole by ignoring requests and grievances and otherwise not assisting him in finding post-release placement sites stated a claim. *E.g.*, *White v. Martin*, No. 13-cv-00646-JPG, 2014 U.S. Dist. LEXIS 61418, at *2-3 (S.D. Ill. May 1, 2014).

In this case, Childress sufficiently alleged that the administrators and personnel of BMRCC knowingly disregarded the risk to Childress's liberty. Childress alleged that they knew that the conditions of his release prohibited him from possessing computer-related materials, (R. 47, 49-50; *see* 730 ILCS 5/3-3-7), but that they nevertheless placed, or condoned a policy which caused to be placed, a computer disk in his exit property in a sealed envelope. (R. 25-27, 48-50.) That envelope was benign and bore no markings indicating that it contained a computer disk, (R. 25-27), and Childress was afforded no notice or warning of the jeopardy in which he was placed. (R. 25-27, 48-50.) Based on his

condition, Childress did not even personally carry out his exit property from BMRCC. (R. 110.) When his residence was inspected just 15 days after his "release," the computer disk in the still unopened envelope was the basis for re-incarcerating Childress. (R. 49.) Importantly, Childress specifically alleged that Bates confessed that Bates and the other administrators and personnel at BMRCC were aware of the risk and that, on at least two other occasions, similarly situated parolees were found in violation of their MSR conditions because they also unknowingly possessed in their exit property the computer disks from the Lifestyle Redirection Program. (R. 48-50.)

These allegations, which should be construed liberally and must be taken as true, establish that the administrators and personnel of BMRCC knew of, but disregarded, a substantial risk to Childress's freedom. Given the relative ease for an accommodation, the conduct of the administrators and personnel is egregious. *See Armstrong*, 152 F.3d at 579 (noting that "simple backup plans" such as printing a roster of pre-trial detainees would have avoided the risk of prolonged confinement).

Despite the well-pleaded allegations, the district court dismissed the claim on the notion that Childress's allegations amounted to mere "negligence." (Appx. 3.) In doing so, the district court failed to credit the admission that Bates and the others knew of the risk, but disregarded it. *See Armstrong*, 152 F.3d at 579-580 (failure to act in the face of repeated complaints evinces the "serious possibility" and, at the very least, an inference of deliberate indifference).

Equally unavailing was the suggestion that Childress's claim failed because Childress was "solely responsible for complying with the conditions of his parole," (Appx. 12), and "could have easily found the computer disk." (Appx. 3.) Of course, the proper inference is that the computer disk could not be "easily found" – Childress certainly would have sooner returned the disk than returned to prison. But, the issue is not whether Childress could have found the computer disk; the issues are whether Bates and the others recklessly disregarded Childress's liberty when they placed the disk in Childress's property in the first instance and what they could have done to avoid depriving Childress of that liberty interest. *See Arnett*, 658 F.3d at 751; *Armstrong*, 152 F.3d at 579. Childress did not place the computer disk in his property, and it

is unreasonable to infer that Childress was feigning ignorance to its presence or to the conditions of his parole.

The district court also based its dismissal on the suggestion that the wardens or other supervisors could not be held liable absent "personal responsib[ility]" in the deprivation of Childress's constitutional rights. (Appx. 4.) As discussed above, Childress alleged that the administrators were personally responsible for depriving Childress of his liberty interests because they knew of a substantial risk to Childress by virtue of the past deprivations, yet maintained a policy that disregarded that risk. *See, e.g.*, *Armstrong*, 152 F.3d at 580 (reversing summary judgment in favor of jail officials who personally participated in violation by failing to act in disregard of known risk of prolonged confinement). Moreover, a prison warden or other supervisor can be personally responsible for the deprivation of another's liberty by failing to adequately supervise the individual that caused the violation if such failure evinces a deliberate or reckless indifference to the rights of the plaintiff. *See Jones v. Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Indeed, a claim for inadequate training or supervision need include only allegations that the supervisor knew that a subordinate

would cause, or had a practice of causing, a constitutional violation, but nevertheless, approved, assisted, condoned, or purposely ignored the actions or practice of the subordinate. *See id.* at 992-93; *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994); *see also* FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, § 7.17 (2009 rev.) (stating elements of Section 1983 claim for supervisory liability).

Childress adequately alleged that at least Bates, Peyton, Winsor, and Eubanks knew that (i) BMRCC had a policy and practice of placing computer disks in unmarked, sealed envelopes in the exit property of parolees and (ii) doing so would jeopardize and ultimately deprive parolees, like Childress, of their liberty because they were prohibited from possessing computer-related material. (R. 49-50.) Based on the history of these known liberty deprivations, it should be inferred from the allegations that the administrators at BMRCC purposely ignored this obvious risk of harm to the inmates. Their knowledge of, but failure to act on, these repeated violations is sufficient to state a claim for a violation of Childress's substantive due process rights.

### 3. Childress Sufficiently Alleged that the Administrators and Personnel of BMRCC Violated His Procedural Due Process Rights.

Childress also alleged sufficient facts to state a claim that the administrators and personnel of BMRCC violated his procedural due process rights by condoning a policy which deprived Childress of his liberty interests without fair process. To determine whether the deprivation of a constitutional right was subject to fair process, courts balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *accord Schepers v. Comm'r*, 691 F.3d 909, 915 (7th Cir. 2012). This analysis is directed at ensuring that constitutional rights are not erroneously deprived without adequate procedural safeguards. *Markadonatos v. Vill. of Woodridge*, 739 F.3d 984, 988 (7th Cir. 2014). Each of these factors weighs in finding a violation here.

First, Childress alleged a protectable interest in his continued liberty as a parolee, (R. 48-49), that could not be deprived absent fair process. *See Montgomery*, 262 F.3d at 644; *Graber*, 2003 U.S. Dist. LEXIS 22307, at *10-11; *Brown*, 2014 U.S. Dist. LEXIS 76532, at *13.

Second, there was a great risk of erroneous deprivation through the procedures used – there were no procedures – because placing a computer disk in Childress's property put him in violation of his MSR conditions instantly upon his release. This risk is evidenced by the prior instances where similarly situated inmates were likewise re-incarcerated because of the same BMRCC policy. Yet, there is a significant likelihood that risk could have been reduced, if not eliminated, through basic safeguards. For instance, BMRCC administrators and personnel could stop placing computer disks in the property of inmates prohibited from possessing computer-related materials. Or, they could notify all parolees that exit property may contain computer disks and should be inspected to confirm it does not. Or, perhaps they could conspicuously identify the sealed envelope. *See Armstrong*, 152 F.3d at 579 (noting that printing a roster of pre-trial

detainees along with the reason for their detention was a "simple backup plan" that could have avoided wrongful confinement).

Finally, BMRCC administrators and personnel have no legitimate interest in continuing to place a disk in the property of parolees without regard for their MSR conditions, and there is no material fiscal or administrative burdens associated with additional or substitute procedural requirements. The examples noted above likely would have provided a non-burdensome safeguard against the unnecessary deprivation of Childress's liberty. *See White*, 2014 U.S. Dist. LEXIS 61418, at *2-3 (holding that plaintiff's claim for violation of procedural due process was sufficient to overcome Section 1915(A) where plaintiff alleged that prison officials ignored his requests and grievances and failed to assist him in finding a post-release placement site).

Ultimately, the administrators and personnel at BMRCC knew that their policy jeopardized the freedom of Childress and others, and the probable value that additional safeguards would eliminate that risk is quite high. There is no legitimate BMRCC interest in maintaining this current policy or in refusing to institute rather basic procedural safeguards to respect the liberty interests at stake. *Cf. Grandberry v.*

*Smith*, 754 F.3d 425 (7th Cir. 2014) ("It is more than a little surprising to encounter an argument by a prison system that an inmate may be penalized for obeying an order by the prison's staff."). Childress alleged enough to state a claim for a violation of his procedural due process rights, and the judgment should be reversed.

### B.    Childress Stated a Claim for Violation of His Eighth Amendment Rights.

The Eighth Amendment protects individuals from cruel and unusual punishment and is violated when an individual is detained in prison longer than he should have been "due to the deliberate indifference and delay" of prison officials. *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006). "To prevail on an Eighth Amendment claim [the parolee] will have to establish that [prison officials] intentionally prevented his release after his custodial sentence had ended, or that they were deliberately indifferent to the risk that their actions would lead to that result." *E.g.*, *White*, 2014 U.S. Dist. LEXIS 61418, at *11-12. For example, allegations that prison officials delayed a parolee's release by ignoring his requests and grievances and failing to assist him in finding a post-release placement site stated a claim for violation of the parolee's procedural due process rights. *Id.* at *12.

In this case, Childress alleged facts demonstrating that the administrators and personnel of BMRCC knowingly placed, caused to be placed, and/or endorsed the policy and practice of placing, the computer disk in the exit property with the understanding that doing so jeopardized Childress's release from custody after his sentence ended. (R. 48-50.) Those facts are sufficient to state a claim that they recklessly disregarded the risk that their actions would prevent his release after his custodial sentence in violation of the Eighth Amendment. The judgment should be reversed.

## II. **The District Court Erred by Dismissing the Complaint With Prejudice.**

Even if this Court determines that the district court correctly concluded that the complaint failed to state a claim, this Court should nevertheless reverse the judgment of the district court because Childress should have been afforded an opportunity to amend his complaint. The district court's decision to dismiss the complaint with prejudice, without any opportunity for amendment, is reviewed for an abuse of discretion. *See Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012).

An *in forma pauperis* plaintiff, like a fee-paying plaintiff, "enjoy[s] leave to amend whenever justice so requires and, as a matter of course, almost always gets an opportunity to amend their complaint at least once." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013) (internal quotations omitted); *see* Fed. R. Civ. P. 15(a). This Court, like the majority of circuit courts to consider the issue, has construed Section 1915(e) in a "sensible" way: "IFP applicants whose complaints are dismissed pursuant to a section 1915 screening for failure to state a claim should be granted leave to amend at least once in all cases in which Rule 15(a) would permit leave to amend." *Luevano*, 722 F.3d at 1024 (collecting cases from other circuits). In *Luevano*, this Court aptly described the consequences of a contrary rule:

> If a district court's *sua sponte* dismissal in such cases were without leave to amend, we would face serious questions about fair access to the courts. Without at least an opportunity to amend or to respond to an order to show cause, an IFP applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest or simply request leave to amend.

*Id.* at 1022 (*citing Eades v. Thompson*, 823 F.2d 1055, 1061-62 (7th Cir. 1987)); *Frey v. EPA*, 270 F.3d 1129, 1131-32 (7th Cir. 2001).

In this case, amendment would have been permitted under Rule 15(a), and the district court abused its discretion by dismissing Childress's complaint with prejudice. First, the complaint had not been served on the defendants and, of course, the defendants had not filed any responsive pleading. *See* Fed. R. Civ. P. 15(a)(1) ("Amending as a Matter of Course"). Second, nowhere in the district court's opinion is there any suggestion that Childress's claims were frivolous or malicious, *see* 28 U.S.C. § 1915(e)(2)(b)(i), or that amendment would be inequitable or futile, (Appx. 7-14). *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (inadequate complaints should be dismissed under section 1915(e)(2) without leave to amend only if amendment would be inequitable or futile). Third, the district court wrongly ignored Childress's request in his motion for reconsideration "to ammend [*sic*.] his complaint and comply with the [district court's] instructions," (R. 102), and instead sought shelter behind the onerous standard for motions for reconsideration, (Appx. 12). *See* Fed. R. Civ. P. 15(a)(2).

Given that the district "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the district court abused its

discretion by dismissing the complaint with prejudice. At a minimum, the case should be remanded with instructions to afford Childress an opportunity to amend his complaint.

## III.   **The District Court Abused Its Discretion by Neglecting to Consider Childress's Motions to Recruit Counsel.**

The decision to recruit pro bono counsel is reviewed for an abuse of discretion. *E.g.*, *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). However, that "does not mean that no legal standard governs that discretion." *Id.* Rather, "a motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (alterations omitted). This Court has articulated those legal principles in several decisions. *E.g.*, *Navejar v. Iyiola*, 718 F.3d 692, 696-97 (7th Cir. 2013); *Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 760-66 (7th Cir. 2010). "[T]he question on appellate review is not whether [this Court] would have recruited a volunteer lawyer in the circumstances, but whether the lower court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Pruitt*, 503 F.3d at 658.

In this case, the district court did not apply any standard, much less the "correct legal standard." *Id.* Childress filed a motion to recruit counsel on December 3, 2010, and again on December 10, 2010, and those motions were amply supported with evidence that Childress made a reasonable attempt to secure counsel. (R. 64-77, 80-84.) There is nothing in the record to suggest that the district court considered Childress's motions – other than to deny them as moot. (Appx. 5.) The failure even to consider the motions was error. *See Alexander v. Ramsey*, 539 F.2d 25, 26 (9th Cir. 1976) (reversing dismissal for failure to consider motion to recruit counsel); *see also DeWitt v. Corizon*, No. 13-2930, 2014 U.S. App. LEXIS 14236, at *7-13 (7th Cir. July 25, 2014) (abuse of discretion not to consider fully a motion to recruit counsel).

While the failure even to consider the request for counsel should alone constitute reversible error, Childress was prejudiced. As noted, Childress was without an adequate law library, (R. 76), physically disabled, (R. 35), and his Constitutional claims are indisputably unique and complex. *See Swofford v. Mandrell*, 969 F.2d 547, 548 (7th Cir. 1992); *Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir. 1983). Moreover, Childress was moved three times following his detention, (R. 49). *See*

*Santiago*, 599 F.3d at 763 (error not to consider transfer in assessing motion to recruit counsel). Even at the pleading stage, counsel could have made a difference by distilling the disturbing facts of this matter and weaving them through the maze of the Due Process and Eighth Amendment analyses. Counsel would also have been vital to additional pre-suit investigation, which would have developed further the depths of the policy and practice of BMRCC and the prior instances where the liberty of parolees was disregarded. (R. 49-50.) This latter point is significant here because the district court denied an opportunity to amend and, instead, gave Childress only one chance to get it right.

**IV.    A Person Detained Under the Sexually Violent Persons Commitment Act is Not A "Prisoner" for Purposes of the Prison Litigation Reform Act.**

On reconsideration, the district court correctly determined that the Prison Litigation Reform Act ("PLRA") did not apply to Childress because Childress was housed at Rushville Treatment and Detention Center awaiting a civil commitment hearing and not a prisoner under 28 U.S.C. § 1915A(a) or 28 U.S.C. § 1915(h). (Appx. 8.) Whether a person detained under the Sexually Violent Persons Commitment Act ("SVPCA"), *see* 725 ILCS 207/1 to 207/99, is a "prisoner" for purposes of

the PLRA is a question of statutory construction this Court reviews *de novo*. *See CFTC v. Worth Bullion Group*, 717 F.3d 545, 549 (7th Cir. 2013).

The PLRA was enacted in 1996 to curb abuses of the justice system in connection with prisoner-related litigation. *See Johnson v. Daley*, 339 F.3d 582, 607 (7th Cir. 2003) (discussing genesis of the PLRA). As part of the effort, the PLRA imposes specific filing requirements on prisoners seeking to file civil actions *in forma pauperis*. Those conditions include the requirements that putative plaintiffs submit materials related to their trust fund account, 28 U.S.C. § 1915(a)(2), and pay the full filing fee. 28 U.S.C. § 1915(b). In addition, the PLRA imposes a "three strikes" provision, which precludes a prisoner from bringing an action if on three or more prior occasions the prisoner pursued an action or appeal that was dismissed as frivolous, malicious, or failing to state a claim. 28 U.S.C. § 1915 (g). As the text of the PLRA makes clear, it applies to a "prisoner" only, *e.g.*, *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000), and a "prisoner" is defined in the PLRA as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated

delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c); *see* 28 U.S.C. § 1915(h).

The SVPCA, which took effect in 1998, is civil in nature, 725 ILCS 207/20, and is intended to allow "for control, care and treatment" for those deemed to be sexually violent persons. 725 ILCS 207/40; *In re Detention of Hardin*, 391 Ill. App. 3d 211, 216, 907 N.E.2d 914, 919 (Ill. App. Ct. 2009), *aff'd*, 238 Ill. 2d 33, 932 N.E.2d 1016 (Ill. 2010). It "applies only to sexually violent individuals subject to release or discharge from state custody." *People v. Masterson*, 2011 IL 110072, ¶ 32, 958 N.E.2d 686, 693 (Ill. 2011). As a result, a "person involuntarily committed under the [SVPCA] is not committed for past conduct." *In re Derry*, 393 Ill. App. 3d 482, 485, 913 N.E.2d 604, 606-607 (Ill. App. Ct. 2009). Instead, "[c]ommitment under the [SVPCA] is civil and so may be for purposes such as incapacitation and treatment, but not punishment." *Lane v. Williams*, 689 F.3d 879, 881 (7th Cir. 2012).

While the label "civil" attached to the SVPCA is significant and entitled to substantial weight, *e.g.*, *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997), it is equally clear from the process of the SVPCA that it is

-44-

civil, not punitive. *See* 725 ILCS 207/5(b). When an individual who has been convicted of a sexually violent offense is nearing release from custody, the State of Illinois may, by providing notice, petition for the civil commitment of the individual. 725 ILCS 207/15; *Masterson*, 2011 IL 110072, at ¶ 32, 958 N.E.2d at 693. An Illinois circuit court then holds a hearing to determine whether the individual is, in fact, a "sexually violent person." 725 ILCS 207/30. "Although individuals subject to the [SVPCA] are afforded certain procedural safeguards similar to those afforded in criminal prosecutions, proceedings under the [SVPCA] are civil, not criminal." *Hardin*, 391 Ill. App. 3d at 216, 907 N.E.2d at 919 (*citing* 25 ILCS 207/20; *In re Detention of Anders*, 304 Ill. App. 3d 117, 122, 710 N.E.2d 475, 479 (Ill. App. Ct. 1999)). Indeed, the Illinois Supreme Court relied on the civil nature of an SVPCA proceeding in determining that the State could appeal a finding of no probable cause. *In re Detention of Hardin*, 238 Ill. 2d 33, 41, 932 N.E.2d 1016, 1020 (Ill. 2010). In that case, the Illinois Supreme Court refused to endorse the criminal-law rule that the State is precluded from appealing a finding of no probable cause and, instead, relied on the express mandate of the SVPCA that proceedings are civil in nature. *Id.*

*See also People v. Seward*, 406 Ill. App. 3d 82, 92, 940 N.E.2d 140, 149 (Ill. App. Ct. 2010) (refusing to grant relief under the Illinois Post-Conviction Hearing Act to a person detained under the SVPCA because commitment under the SVPCA is "civil").

In an admittedly different setting, Chief Judge Wood recognized the distinction between those detained at Rushville under the SVPCA and "prisoners." *Lane*, 689 F.3d at 884-886 (Wood, J. concurring in part and dissenting in part). The procedures enacted under the SVPCA have as their "goal . . . providing specialized treatment that promotes a personal responsibility and pro-social behavioral change so that all residents may be released and successfully returned to their communities." *Id.* at 885 (internal quotations and alterations omitted). Indeed, Chief Judge Wood cautioned that "we must not lose sight of the legal justification for the detention of [Rushville's] residents. * * * Although the plaintiffs are not free to leave Rushville until they are deemed cured, they are not prisoners in the traditional sense; rather, their commitment is meant to be rehabilitative and aimed at the goal of their ultimate release." *Id.* To be sure, "it is beyond dispute that the purpose of plaintiffs' detention [under the SVPCA] is not punitive." *Id.*

Even assuming a person committed under the SVPCA, or a person awaiting a hearing on a petition for civil commitment, is "detained" at a "facility," that person is not a "prisoner" for purposes of the PLRA because he or she is not (a) "accused of," (b) "convicted of," (c) "sentenced for," or (d) "adjudicated delinquent for" (i) "violations of criminal law" or (ii) "violations of . . . the terms and conditions of parole, probation, pretrial release, or diversionary program," 28 U.S.C. § 1915(h). *E.g.*, *Schloss v. Ashby*, No. 11-CV-3337, 2011 U.S. Dist. LEXIS 116855, at *3 (C.D. Ill. Oct. 11, 2011) (holding that individuals detained at Rushville are not "prisoners" under the PLRA "because they have no current criminal charges filed against them and are not serving criminal sentences"); *Ehrlich v. Mantzke*, No. 01 C 7449, 2002 U.S. Dist. LEXIS 3032, at *4 (N.D. Ill. Feb. 25, 2002) (persons detained under the SVPCA "are not 'prisoners' for purposes of the PLRA"). Instead, a person committed, or awaiting a hearing, under the SVPCA is at most "detained" for a civil remedy where the State of Illinois intends to show, or has shown, that it is "substantially probable that he will engage in acts of sexual violence." 725 ILCS 207/5(b).

Illinois is not the only State to enact a scheme like the SVPCA, *United States v. Comstock*, 560 U.S. 126, 177 n.15 (2010) (Thomas, J. dissenting) (delineating the 22 states that, at the time, had passed statutes similar to the SVPCA), and other courts have likewise concluded that a person detained under state laws similar to the SVPCA is not a prisoner for purposes of the PLRA. For example, District Judge Crabb held that a person detained under Wisconsin's Sexually Violent Persons Act, on which the SVPCA was modeled, *Hardin*, 238 Ill. 2d at 46, 932 N.E.2d at 1023, is not a "prisoner" for purposes of the PLRA. *West v. Macht*, 986 F. Supp. 1141, 1143 (W.D. Wis. 1997). The court found that "[a]lthough [the plaintiff] has been convicted of a criminal violation, his current detention is not part of the punishment for that crime but is instead a civil commitment imposed because of a judicial determination that [he is] a sexually violent person under Wisconsin law." *Id.*; *accord Tran v. Kriz*, No. 08-C-228, 2008 U.S. Dist. LEXIS 83269, at *2 (E.D. Wis. Mar. 21, 2008).

Along the same lines, the Fourth Circuit concluded that an individual detained under South Carolina's Sexually Violent Predator Act was not a "prisoner" for purposes of the PLRA. *Michau v.*

*Charleston County*, 434 F.3d 725, 727-28 (4th Cir. 2006). In that case, the court relied heavily on the notion that, like the SVPCA here, the South Carolina act created "a system of civil, not criminal, detention." *Id.* at 727; *accord Merryfield v. Jordan*, 584 F.3d 923, 927 (10th Cir. 2009) (holding that a person committed under the Kansas Sexually Violent Predator Act was not a "prisoner" under the PLRA); *Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (holding that a person civilly committed is not a prisoner within the meaning of the PLRA); *Kolocotronis v. Morgan*, 247 F.3d 726, 728 (8th Cir. 2001) (inmate held based on a finding he was not guilty by reason of insanity was not a "prisoner" under the PLRA); *Page*, 201 F.3d at 1139-40 (a person civilly committed under California's Sexually Violent Predator Act is not a "prisoner" for purposes of the PLRA). For similar reasons, an incarcerated alien facing deportation is not deemed a "prisoner" under the PLRA. *E.g.*, *Cohen v. Clemens*, 321 Fed. Appx. 739, 743 (10th Cir. 2009); *Agyeman v. INS*, 296 F.3d 871, 876 (9th Cir. 2002); *LaFontant v. INS*, 135 F.3d 158, 165 (D.C. Cir. 1998); *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997).

The district court correctly distinguished the Sexually Dangerous Persons Act, 725 ILCS 205/1.01-12, and this Court's decision in *Kalinkowski v. Bond*, 358 F.3d 978 (7th Cir. 2004). In *Kalinkowski*, this Court concluded that the PLRA applied to a person committed under the Sexually Dangerous Persons Act. In doing so, this Court recognized that a person committed under the Sexually Dangerous Persons Act "is a pretrial detainee: a person charged with a felony, whose criminal proceedings are held in abeyance during treatment for mental illness." *Id.* at 979. Acknowledging many of the authorities cited above, the Court deemed it "unnecessary to consider whether a person whose criminal conviction has expired, and is held thereafter as sexually dangerous, also is a 'prisoner.'" *Id.* Unlike the SVPCA, which covers individuals who are not charged with a felony, and are, or are about to be, released from confinement, the Sexually Dangerous Persons Act "provides an alternative to criminal prosecution." *Masterson*, 2011 IL 110072, at ¶ 38, 958 N.E.2d at 695 (rejecting an equal protection claim, in part, because the SVPCA and the Sexually Dangerous Persons Act are "directed at different categories of offenders"); *see Varner v. Monohan*, 460 F.3d 861, 865-66 (7th Cir. 2006) (discussing the

differences between the Sexually Dangerous Persons Act and the
SVPCA).

Childress's case demonstrates that a person detained under the
SVPCA is not a "prisoner" for purposes of the PLRA. The record reflects
that, at the time of the filing of the complaint, Childress "fully
discharged his sentence, was not on parole, had no pending criminal
charges or warrants, and was a registered voter and citizen of Schuyler
County" – all hallmarks of a person who was not a "prisoner." (R. 94.)

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the lower court should be reversed and the case should be remanded with instructions to recruit pro bono counsel.  In the alternative, the case should be remanded with instructions to permit Childress to amend the Complaint and with instructions to recruit pro bono counsel.


Respectfully Submitted,

CRAIG A. CHILDRESS

By: <u> /s/     Scott J. Fisher     </u>
        One of His Attorneys

Scott J. Fisher
Eric Y. Choi
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Phone: (312) 269-8000

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,758 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 and has 14-point Century Schoolbook font.


Date: August 20, 2014          /s/  Scott J. Fisher
                               Scott J. Fisher

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


   /s/  Scott J. Fisher

## CIRCUIT RULE 30(d) CERTIFICATION
## AND INDEX OF SHORT APPENDIX

Pursuant to Circuit Rule 30(d), I hereby certify that the following

materials, which are attached to this brief, include all of the materials

required by Circuit Rule 30(a) and 30(b).

1.     February 20, 2013 Memorandum and Order ....................... Appx. 1

2.     Judgment in a Civil Case ...................................................... Appx. 6

3.     January 28, 2014 Memorandum and Order ......................... Appx. 7

4.     Amended Judgment in a Civil Case .................................. Appx. 15

Date: August 20, 2014

　　　　　　　　　　　　　　　 /s/  Scott J. Fisher
　　　　　　　　　　　　　　　　 Scott J. Fisher

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRAIG A. CHILDRESS, # 902850, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-1230-JPG |
| | ) | |
| S.A. GODINEZ, MICHAEL RANDLE, | ) | |
| ROGER WALKER, JOHN EVANS, | ) | |
| ROBERT HILLIARD, | ) | |
| WILLIAM PEYTON, TY BATES, | ) | |
| ANGELA WINSOR, R.G. EUBANKS, | ) | |
| DANALYN WILSON, | ) | |
| UNKNOWN PARTY JOB | ) | |
| PREPAREDNESS INSTRUCTOR, | ) | |
| UNKNOWN PARTY JOHN/JANE DOES, | ) | |
| and GLADYSE TAYLOR, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at the Treatment and Detention Facility in Rushville,

Illinois ("TDF"),[1] has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff is in the custody of the Department of Human Services as a civilly committed detainee.

The incidents giving rise to his claims arose while he was an inmate at Big Muddy River

Correctional Center ("BMRCC").  He claims that Defendants violated his civil rights by placing

a computer disk in his personal property box, which led to the revocation of his parole.

More specifically, Plaintiff states that he successfully completed a three-week "Life Style

---

[1] According to the website of the Illinois Department of Human Services, the TDF houses people civilly detained under the Sexually Violent Persons Commitment Act. Http://www.dhs.state.il.us/page.aspx?item=42716.  Civilly committed sex offenders in Illinois are subject to the Prison Litigation Reform Act ("PLRA") (28 U.S.C. § 1915 *et seq*).  *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004).

Appx. 01

Redirection Program" through Rend Lake College in August 2010, shortly before his release

from BMRCC (Doc. 1, p. 9).  Defendant Wilson was the instructor.  Like all other participants in

this program, Plaintiff was issued a floppy computer disk by Defendant Wilson that contained

his resume and cover letter.  *Id*.  This disk and the hard copies of the resume and letter were in a

sealed envelope that was stored in the BMRCC institutional property room.

On August 18, 2010, Correctional Officer Saurbrunn (who is not a named Defendant)

packed the computer disk in Plaintiff's personal exit property, which Plaintiff took with him to

his parole site (Doc. 1, pp. 9-10).  One of the conditions of Plaintiff's parole was that he not have

any computer related materials in his possession (Doc. 1, p. 10).

On September 3, 2010, a routine inspection of Plaintiff's residence turned up the

computer disk, and Plaintiff was taken into custody for a parole violation.  *Id*.  He was eventually

transferred back to BMRCC, and was informed on December 6, 2010, that the Prisoner Review

Board had found him in violation of his parole.

When Plaintiff arrived back at BMRCC on November 16, 2010, Plaintiff learned through

a conversation with Defendant Bates (Assistant Warden of Programs), that two other inmates in

Illinois had been found in violation of their parole because of a computer disk being placed in

their outgoing personal property by IDOC employees (Doc. 1, p. 10).  Plaintiff contends that

because of these prior incidents, the Defendants' continued adherence to their policies, practices,

and procedures amount to "systemic and brazen indifference[,] . . . gross negligence and reckless

disregard for the plaintiffs [sic] Constitutional Rights" (Doc. 1, p. 11).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of

the complaint.  After fully considering the allegations in Plaintiff's complaint, the Court

concludes that this action is subject to summary dismissal.

Appx. 02

First, nothing in Plaintiff's complaint indicates that Defendant Wilson or any prison official placed the computer disk in Plaintiff's possession with the intent of causing him to violate a parole condition, nor even with any knowledge that possession of this item would be contrary to the conditions of his parole. Constitutional deliberate indifference must involve a defendant's conscious disregard of a known or obvious substantial risk to a prisoner's health or safety. *See Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991). These elements are not present here. At most, Plaintiff's allegations indicate that the placement of the computer disk in his property could have been a negligent act. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Further, by the time Plaintiff's residence was inspected on September 3, 2010, he had been away from BMRCC on parole for approximately two weeks. He had exclusive control over his property items and could have easily found the computer disk. Indeed, it appears from the complaint that he knew he would be given the disk upon completion of the Life Style program, since he states that this was the regular practice. As a parolee, it was Plaintiff's responsibility to know and comply with all the conditions of his parole. *See Morrissey v. Brewer,* 408 U.S. 471, 480 (1972) (parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions"). He could have disposed of any personal property items that posed a problem, or sent them to a family member or friend for safekeeping. Conversely, Defendant Wilson had no reason to know that Plaintiff or any other particular parolee would be forbidden from possessing a computer disk, or that he would retain the disk in violation of his conditions. Not all parolees are subject to the conditions that applied to Plaintiff as a sex offender, and indeed, parole conditions for sex

Appx. 03

offenders may vary.  *See* 730 ILL. COMP. STAT. 5/3-3-7.  It is unfortunate that Plaintiff appears to have unintentionally run afoul of his conditions of release.  However, none of the Defendants' actions amounted to a violation of Plaintiff's constitutional rights.

Even assuming, for the sake of argument, that Defendant Wilson or the BMRCC property officer committed a constitutional violation by giving Plaintiff the computer disk, this would not translate into liability on the part of the wardens, IDOC Directors, or other Defendants in supervisory positions.  The doctrine of *respondeat superior* is not applicable to § 1983 actions; to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right."  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Plaintiff has not alleged that Defendants Godinez, Taylor, Randle, Walker, Evans, Hilliard, Peyton, Bates, Winsor, Eubanks, or the Unknown Defendants had any personal involvement in the events which led to his possession of the computer disk.

Plaintiff's claim that some Defendants interfered with the processing of his grievances or his attempts to exhaust administrative remedies (Doc. 1-1, pp. 11-12) does not implicate any constitutional rights.  Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se.  As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Finally, any due process concerns arising from the Prisoner Review Board's revocation of Plaintiff's parole cannot be addressed in a civil rights action.  A petition for writ of habeas

Appx. 04

corpus is the proper method for challenging constitutional deficiencies in a parole revocation

hearing.  *See Morrissey v. Brewer*, 408 U.S. 471 (1972) (constitutional review of parole

revocation proceedings brought in habeas); *Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir.

1977) (challenges to conditions of parole must be brought in habeas corpus action).  However,

before petitioning for a writ of habeas corpus, a plaintiff must first exhaust his state remedies.

*Id.*  A writ of mandamus in Illinois state court is the proper avenue for constitutional challenges

to a parole revocation proceeding.  *See Lee v. Findley*, 835 N.E.2d 985, 987 (Ill. App. Ct. 2005).

## Disposition

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to

state a claim upon which relief may be granted.

All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under

the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action

was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and

payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  February 20, 2013**

s/J. Phil Gilbert
United States District Judge

Appx. 05

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRAIG A. CHILDRESS, # 902850, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-1230-JPG |
| | ) | |
| S.A. GODINEZ, MICHAEL RANDLE, | ) | |
| ROGER WALKER, JOHN EVANS, | ) | |
| ROBERT HILLIARD, | ) | |
| WILLIAM PEYTON, TY BATES, | ) | |
| ANGELA WINSOR, R.G. EUBANKS, | ) | |
| DANALYN WILSON, | ) | |
| UNKNOWN PARTY JOB | ) | |
| PREPAREDNESS INSTRUCTOR, | ) | |
| UNKNOWN PARTY JOHN/JANE DOES, | ) | |
| and GLADYSE TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>JUDGMENT IN A CIVIL CASE</u>

This action came before the Court, District Judge J. Phil Gilbert, and the following

decision was reached:

**IT IS ORDERED** that Plaintiff shall recover nothing, and the action be **DISMISSED on**

**the merits with prejudice,** the parties to bear their own costs.  This dismissal shall count as one

of Plaintiff's allotted "strikes" under 28 U.S.C. § 1915(g).

DATED:  **February 20, 2013**

NANCY J. ROSENSTENGEL, CLERK


By: s/ Tanya Kelley
**Deputy Clerk**


APPROVED: s/J. Phil Gilbert
**J. Phil Gilbert**
**United States District Judge**

Appx. 06

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRAIG A. CHILDRESS, # 902850, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-1230-JPG |
| | ) | |
| S.A. GODINEZ, MICHAEL RANDLE, | ) | |
| ROGER WALKER, JOHN EVANS, | ) | |
| ROBERT HILLIARD, | ) | |
| WILLIAM PEYTON, TY BATES, | ) | |
| ANGELA WINSOR, R.G. EUBANKS, | ) | |
| DANALYN WILSON, | ) | |
| UNKNOWN PARTY JOB | ) | |
| PREPAREDNESS INSTRUCTOR, | ) | |
| UNKNOWN PARTY JOHN/JANE DOES, | ) | |
| and GLADYSE TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court on Plaintiff's motion to alter, set aside, and vacate judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 9). The motion was filed with this Court on March 1, 2013, and challenges this Court's February 20, 2013, dismissal of this *pro se* § 1983 action pursuant to 28 U.S.C. § 1915A (Doc. 7). Rule 59(e) permits a court to amend a judgment only if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence that was not previously available. *See, e.g., Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007).

In his complaint, Plaintiff claimed that Defendants violated his civil rights by placing or allowing the placement of a computer disk in his personal property shortly before he was paroled from the Big Muddy River Correctional Center in August 2010. The disk contained Plaintiff's resume and a cover letter he had prepared while enrolled in a class. In September 2010, the disk was

Appx. 07

discovered in Plaintiff's possession, and he was taken back into custody on a parole violation. A condition of his parole was that he not possess any computer-related materials.

At the time he filed his complaint on December 3, 2012, Plaintiff was a resident of the Treatment and Detention Facility ("TDF") in Rushville, Illinois, which is an institution administered by the Illinois Department of Human Services to house civil detainees held pursuant to the Sexually Violent Persons Commitment Act.

Plaintiff challenges this Court's dismissal of his case on two fronts. First, he asserts that he is not a prisoner, nor has he been civilly committed, and this action should not have been subject to the requirements of the Prison Litigation Reform Act ("PLRA"). Secondly, he argues that his claims were improperly dismissed on substantive grounds, because this Court misunderstood his factual allegations and failed to properly apply the law.

After reconsideration of the matter, the Court concludes that Plaintiff indeed should not have been considered a "prisoner" as defined in the PLRA. 28 U.S.C. §§1915(h); 1915A(c).[1] However, this does not change the ultimate outcome of his case, as it is still subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted.

**Applicability of the Prison Litigation Reform Act ("PLRA")[2]**

In the order dismissing this action, this Court concluded that Plaintiff was a civilly committed sex offender, based on the fact that he was (and still is) a resident of the Rushville TDF.[3] Relying on *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004), the Court presumed that Plaintiff was a

---

[1] For purposes of the PLRA, a "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." This identical definition is used in both 28 U.S.C. § 1915(h) and § 1915A(c).

[2] The PLRA is codified in several locations; these include portions of 28 U.S.C. § 1915 and 42 U.S.C. § 1997e, and the addition in 1996 of 28 U.S.C. § 1915A.

[3] The Illinois Sex Offender Information website shows that Plaintiff is "Detained by the Illinois Department of Human Services." http://www.isp.state.il.us/sor/offenderlist.cfm (last visited Jan. 15, 2014). All of his pleadings and motions have been mailed using the return address of the TDF in Rushville, Illinois, and he lists this as his address.

Appx. 08

prisoner subject to the PLRA, and screened the complaint pursuant to 28 U.S.C. § 1915A.  The Court dismissed the action because Plaintiff's allegations did not indicate that his constitutional rights were violated by any of the Defendants' actions.

Plaintiff asserts in his motion that he is not a prisoner, that he has fully discharged his sentence, is not on parole, has no pending criminal charges or outstanding warrants, and is a registered voter and citizen of Schuyler County (Doc. 9, p. 1).  The Court accepts these allegations as true, however, it is also clear that Plaintiff is not a free man.  Although he asserts he is not civilly committed, the fact that he resides in the TDF indicates that a court has ordered him to be confined pursuant to the Sexually Violent Persons Commitment Act, 725 ILL. COMP. STAT. 207/1 *et seq.*

In *Kalinowski*, the Seventh Circuit concluded that a detainee who is in custody after having been found to be a sexually *dangerous* person (SDP) fits within the PLRA's definition of a "prisoner," because such an individual is a "person charged with a felony, whose criminal proceedings are held in abeyance during treatment for mental illness."  *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004); see also 725 ILL. COMP. STAT. 205/0.01 *et seq*.  However, the *Kalinowski* Court declined to address whether an individual kept in custody as a sexually *violent* person (SVP) is a "prisoner" for PLRA purposes, noting that "[a]pplying the PLRA's definition to such detainees may be difficult."  *Kalinowski*, 358 F.3d at 979.  The court observed that a person detained as sexually violent "has been 'sentenced for' a crime, but the justification for ongoing custody is future dangerousness rather than (solely) past criminality."  *Id*. (citing *Kansas v. Crane*, 534 U.S. 407 (2002)).

According to Plaintiff, he has served his entire criminal sentence, and is no longer on parole.  Based on these facts and his other assertions, he does not fall within the PLRA's definition of a "prisoner" – he is not currently serving a sentence resulting from a criminal conviction, nor is he facing pending charges, nor is he being held for a parole violation.  Other federal courts have reached the same conclusion as to "sexually violent" detainees.  *See Merryfield v. Jordan*, 584 F.3d 923, 927

Appx. 09

(8th Cir. 2009) (PLRA did not apply to detainee held because he poses a future danger as a sexually

violent predator); *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (detainee who had

completed criminal sentence but was held under California sexually violent predator law was not a

"prisoner" as defined in the PLRA); *Schloss v. Ashby*, No. 11-CV-3337, 2011 WL 4804868, at *1-2

(C. D. Ill. Oct. 11, 2011) (finding that plaintiffs, all detainees in the Rushville, Illinois, TDP under

the Sexually Violent Persons Act, are not "prisoners" within the meaning of the PLRA); *Levi v.

William*, No. 07-3228, 2007 WL 2893647, at *1 (C.D. Ill. Sept. 28, 2007) (same).

In light of this reasoning, Plaintiff's motion to alter judgment (Doc. 9) shall be **GRANTED

IN PART**.  The Court's application of the PLRA to this action was in error, as he is not a "prisoner"

as defined therein.  Accordingly, Plaintiff is not subject to the fee payment provisions of 28 U.S.C. §

1915(a)(2) or § 1915(b), and the order at Doc. 6 (which granted Plaintiff's motion to proceed *in

forma pauperis*) shall be modified accordingly.

## Dismissal of Constitutional Claims

Because the PLRA does not apply to Plaintiff, the Court also erred in using the prisoner-

screening provisions of 28 U.S.C. § 1915A to evaluate the merits of Plaintiff's complaint.  However,

because Plaintiff sought leave to proceed in this action without prepayment of the filing fee, the

Court has authority – and indeed is required – to dismiss the case if the complaint fails to state a

claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2).  That statute applies to any case

where *in forma pauperis* (IFP) status is sought, whether or not the plaintiff is a prisoner.  It provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the court determines that –
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary relief against a defendant who is immune from such
> > relief.

28 U.S.C. § 1915(e)(2).  This action was properly dismissed on the merits under the above standard

(which is virtually identical to the language in § 1915A), because Plaintiff failed to state a claim on which relief may be granted.  The Defendants did not violate Plaintiff's constitutional rights.

In the instant motion, Plaintiff argues that Defendants violated several Illinois state laws, and asserts that this Court erred in failing to exercise supplemental jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367 (Doc. 9, p. 3).  According to Plaintiff, "the Administration" was aware that two other inmates had previously been found in violation of parole conditions for having a computer disk, which had been placed in their property by prison officials (Doc. 9, p. 4).  Despite this knowledge, they continued to follow the same practice in his case, which he claims was a violation of state law (Doc. 9, pp. 4-5).

Plaintiff's argument is unavailing.  Even if the Court were to accept the dubious premise that Defendants' actions violated Illinois statutes, this would not establish a constitutional violation.  "The federal government is not the enforcer of state law."  *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).  *See also Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989) (federal courts do not enforce state law or regulations).  Moreover, while Plaintiff might have a claim for negligence under state tort law, it is not appropriate for a federal court to retain supplemental jurisdiction over such a claim when all federal claims have been dismissed.  28 U.S.C. § 1367(c)(3).  Notably, although Plaintiff mentioned supplementary jurisdiction and § 1367(a) in the complaint (Doc. 1-1, p. 2), he did not assert any distinct state law claims in that pleading.  Each of his claims invoked 42 U.S.C. § 1983; most were labeled as "deliberate indifference" and others invoked the First and Fourteenth Amendment and claimed § 1983 conspiracy (Doc. 1-1, pp. 9-15).  The Court did not err in declining to retain supplemental jurisdiction over any potential state law claims.

Plaintiff further argues that the Court "misrepresent[ed] the facts" of his complaint by concluding that his factual allegations did not demonstrate that any Defendant acted with the intent to cause Plaintiff to violate the conditions of his parole (Doc. 9, p. 5).  Again, Plaintiff argues that

Defendant Wilson violated state law by causing "contraband" (the computer disk) to be placed among his exit property, and Defendant Warden Bates allowed the material to be given to Plaintiff even though he knew of two other incidents where parolees incurred violations for possessing such disks.  However, as stated in the order dismissing this action, Plaintiff was solely responsible for complying with his conditions of parole.  Having re-examined the pleadings, the Court finds no error in its conclusion that the factual allegations did not indicate that any Defendant's conduct rose to the level of unconstitutional deliberate indifference.  This case was properly dismissed when analyzed under the directive of § 1915 (e)(2)(B)(ii).

In support of his motion, Plaintiff attaches two affidavits (Doc. 9, pp. 13, 17).  These documents contain nothing that would alter the Court's conclusion as to the merits of Plaintiff's claims.  Further, a motion under Rule 59(e) cannot be used to present evidence, such as these affidavits, that could have been presented before judgment was entered.  *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (citing *Sigsworth v. City of Aurora,* 487 F.3d 506, 512 (7th Cir. 2007).

**<u>Disposition</u>**

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff's motion to alter, set aside and vacate judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

The Order at Doc. 6 which granted Plaintiff's motion to proceed in forma pauperis is **MODIFIED** insofar as Plaintiff shall **NOT** be required to make any further payments toward the filing fee for this action during his confinement.  The prisoner-payment provisions of 28 U.S.C. § 1915 do not apply to him, and the Trust Fund Officer at Plaintiff's institution shall **NOT** deduct any further payments from his account.

The Clerk is **DIRECTED** to mail a copy of this Order to the Trust Fund Officer at the Illinois Treatment and Detention Facility (DHS/TDF) upon entry of this Order.

Plaintiff has paid a partial fee of $8.36 and no other payments have been received by the Court toward the $350.00 filing fee for this action.  While the PLRA fee requirements do not apply to

Appx. 12

Plaintiff, "[a] court has it within its discretion to insist that litigants proceeding IFP in non-PLRA cases must nonetheless pay a fee commensurate with their ability to do so." *See Walker v. O'Brien*, 216 F.3d 626, 638 n.5 (7th Cir. 2000).  The Court is satisfied that Plaintiff's $8.36 payment is commensurate with his ability to pay at the time this action was filed.  As with any other litigant, Plaintiff incurred the obligation to pay the filing fee for this action when it was filed, and the remaining balance of $341.14 is a debt he owes to the Court.  *See Lucien v. Jockisch*, 133 F.3d 464, 467-68 (7th Cir. 1998) (fee remains due even where suit is dismissed); *Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997) (a plaintiff incurs the obligation to pay the filing fee at the time the action or appeal is commenced).

This civil rights action **REMAINS DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, although the dismissal is now pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Because Plaintiff is not a "prisoner" within the meaning of the PLRA, he is not subject to the "three-strike" provisions of 28 U.S.C. § 1915(g).  Therefore, this Court's merits review order at Doc. 7 is **MODIFIED** to reflect that the dismissal of this action does **NOT** count as a "strike" under the provisions of 28 U.S.C. § 1915(g).

The Clerk's judgment at Doc. 8 is **VACATED.**  The Clerk is **DIRECTED** to enter an amended judgment to reflect the dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and the fact that the dismissal does not count as a "strike."

If Plaintiff wishes to appeal the dismissal of his case, he may file a notice of appeal with this court within thirty days of the entry of the amended judgment.  FED. R. APP. P. 4(a)(1)(A); *York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 401 (7th Cir. 2011).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal and is allowed to proceed IFP, he will incur the obligation to pay the $505.00 appellate filing fee (and may be assessed a partial payment

Appx. 13

commensurate with his ability to pay) irrespective of the outcome of the appeal.  *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: January 28, 2014**

<u>s/ J. Phil Gilbert</u>
United States District Judge

Appx. 14

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRAIG A. CHILDRESS, # 902850, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-1230-JPG |
| | ) | |
| S.A. GODINEZ, MICHAEL RANDLE, | ) | |
| ROGER WALKER, JOHN EVANS, | ) | |
| ROBERT HILLIARD, | ) | |
| WILLIAM PEYTON, TY BATES, | ) | |
| ANGELA WINSOR, R.G. EUBANKS, | ) | |
| DANALYN WILSON, | ) | |
| UNKNOWN PARTY JOB | ) | |
| PREPAREDNESS INSTRUCTOR, | ) | |
| UNKNOWN PARTY JOHN/JANE DOES, | ) | |
| and GLADYSE TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED JUDGMENT IN A CIVIL CASE

This action came before the Court, District Judge J. Phil Gilbert, and the following decision was reached:

**IT IS ORDERED** that Plaintiff shall recover nothing, and the action is **DISMISSED on the merits with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the parties to bear their own costs. Because Plaintiff is not a "prisoner" within the meaning of the PLRA, this dismissal shall not count as a "strike" under 28 U.S.C. § 1915(g).

**DATED**: January 21, 2014

NANCY J. ROSENSTENGEL, CLERK

By: s/ Tanya Kelley
Deputy Clerk

APPROVED:  *s/J. Phil Gilbert*
J. Phil Gilbert
United States District Judge

Appx. 15