No. 14-1204

# In the
# United States Court of Appeals
# For the Seventh Circuit

CRAIG A. CHILDRESS,

*Plaintiff-Appellant,*

v.

ROGER E. WALKER, JR., *et al.*,
*Defendants-Appellees.*

———————————————

Appeal from the United States District Court
Southern District of Illinois
Case No. 3:12-cv-01230-JPG
The Honorable J. Phil Gilbert, District Judge

———————————————

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## CRAIG A. CHILDRESS

———————————————

Scott J. Fisher
Eric Y. Choi
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Phone: (312) 269-8000

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT .................................................... 1

ARGUMENT ..................................................................... 5

I.    Childress Stated A Claim By Alleging A Policy At BMRCC That Unconstitutionally Jeopardized His Freedom ....................... 5

     A.    Childress Adequately Pleaded That The Defendants Were Deliberately Indifferent To An Obvious Risk ............. 6

     B.    Childress Was Not Required To Allege That Every Defendant Physically Placed The Disk In Childress's Exit Property ....................................................... 12

II.   The Existence Of Post-Deprivation Remedies Does Not Preclude A Procedural Due Process Claim For Pre-Deprivation Protections ................................................... 15

III.  Leave To Amend Was Required, And The District Court Made No Findings To Justify Its Decision Not To Afford Leave To Amend .............................................................. 18

IV.  The Failure To Consider The Requests To Recruit Counsel Was Error ............................................................. 19

V.   The Affirmative Defense Of Qualified Immunity Does Not Apply ...................................................................... 21

CONCLUSION .................................................................. 26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS ................. 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Deangelo,*
329 F.3d 912 (7th Cir. 2003) ................................................................ 24

*Alvarado v. Litscher,*
267 F.3d 648 (7th Cir. 2001) ......................................................... 22, 23

*Armstrong v. Squadrito,*
152 F.3d 564 (7th Cir. 1998) ......................................................... 11, 14

*Arnett v. Webster,*
658 F.3d 742 (7th Cir. 2011) ................................................. 7, 8, 11, 13

*Auriemma v. Rice,*
910 F.2d 1449 (7th Cir. 1990) .............................................................. 24

*Board v. Farnham,*
394 F.3d 469 (7th Cir. 2005) ................................................... 10, 13, 24

*Burke v. Johnston,*
452 F.3d 665 (7th Cir. 2006) ............................................................... 24

*Catlin v. City of Wheaton,*
574 F.3d 361 (7th Cir. 2009) ............................................................... 25

*Eberhardt v. O'Malley,*
17 F.3d 1023 (7th Cir. 1994) ............................................................... 24

*Gonzalez v. City of Elgin,*
578 F.3d 526, 540 (7th Cir. 2009) ...................................................... 25

*Hope v. Pelzer,*
536 U.S. 730 (2002) ............................................................................. 24

*Jacobs v. City of Chicago,*
215 F.3d 758 (7th Cir. 2000) ......................................................... 22, 23

*Johnson v. Snyder*,
   444 F.3d 579 (7th Cir. 2006)..............................................................7

*Jones v. Chicago*,
   856 F.2d 985 (7th Cir. 1988)............................................................14

*Junior v. Anderson*,
   724 F.3d 812 (7th Cir. 2013)............................................................21

*Lagerstrom v. Kingston*,
   463 F.3d 621 (7th Cir. 2006)..........................................15, 16, 17

*Landstrom v. Illinois Dep't of Children and Family Servs.*,
   892 F.2d 670 (7th Cir. 1990)............................................................24

*Luevano v. Wal-Mart Stores, Inc.*,
   722 F.3d 1014 (7th Cir. 2013)................................................3, 7, 18

*Lundeen v. Rhoad*,
   991 F. Supp. 2d 1008, 1022 (S.D. Ind. 2014) ..................................18

*Matthews v. Eldridge*,
   424 U.S. 319 (1976)..........................................................................17

*McPherson v. McBride*,
   188 F.3d 784 (7th Cir. 1999)......................................................16, 17

*Navejar v. Iyiola*,
   718 F.3d 692 (7th Cir. 2013)............................................................20

*Pourghoraishi v. Flying J, Inc.*,
   449 F.3d 751 (7th Cir. 2006)............................................................25

*Roe v. Elyea*,
   631 F.3d 843 (7th Cir. 2011)............................................................13

*Smith v. City of Chicago*,
   242 F.3d 737 (7th Cir. 2001)............................................................25

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008)..........................................................21

*Thomas v. Cook County Sheriff's Dep't,*
  588 F.3d 445 (7th Cir. 2009)..............................................................13

*Valance v. Wisel,*
  110 F.3d 1269 (7th Cir. 1997)..........................................................23

*West v. Waymire,*
  114 F.3d 646 (7th Cir. 1997) .............................................................9

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1915...............................................................................5, 6, 23

Fed. R. Civ. P. 15 ...............................................................................3, 18

*Monitoring Tour of Big Muddy River Correctional Center,*
July 28, 2010,
  John Howard Association of Illinois .....................................................9

*Monitoring Visit to Big Muddy River Correctional Center 2013,*
  John Howard Association of Illinois .....................................................9

## SUMMARY OF THE ARGUMENT

The opposition of Attorney General Madigan reads like an appellee's brief defending the grant of summary judgment, not a brief defending a dismissal at the gate-keeping stage. The opposition fails to confront many of the allegations and authorities at the heart of the claims of Plaintiff-Appellant Craig A. Childress, but it most significantly neglects to recognize that a man incarcerated for more than a decade would not jeopardize his liberty for a computer disk with his resume. The allegations in Childress's *pro se* complaint should be liberally construed and taken as true, and all reasonable inferences should be drawn in his favor. Against the proper framework, Childress's complaint should not have been dismissed with prejudice.

First, the Attorney General wrongly suggests that Childress did not adequately plead deliberate indifference. The Constitution compels an official who knows of a substantial risk to take action to eliminate the risk. Childress alleges that, as part of a facility-sponsored program, the administrators and personnel of Big Muddy River Correctional Center maintained a policy and practice of placing a concealed computer disk in the exit property of parolees, and the complaint

asserts that they did so knowing that possession of computer-related materials violates the conditions of the parolees' mandatory supervised release. Childress's complaint is verified and supported by an admission from Warden Bates that the personnel of BMRCC were conscious of at least two other instances when parolees were re-incarcerated solely for possessing the computer disk which the BMRCC personnel placed in their exit property. That admission is not as confined as the Attorney General suggests, and it, alone, is sufficient to support Childress's claims.

In addition, the Attorney General incorrectly claims that the defendants did not know that placing a disk in Childress's property violated the conditions of his mandatory supervised release. Childress indeed alleges that defendants acted with "knowledge and forethought," and it is reasonable to infer knowledge, or at least knowledge of an obvious risk, given that Childress's MSR conditions are common for sex offenders and more than fifty percent of the inmates at BMRCC are sex offenders.

Second, the Attorney General too narrowly characterizes the deliberate indifference standard when she argues that a defendant who

did not place the disk in Childress's possession could not have recklessly disregarded a known risk. Any defendant who knew that the policy of placing the computer disk in the exit property posed a substantial risk to Childress's protected interests, but took no action to eliminate the obvious risk, would clearly run afoul of the Constitution. The fair construction of the complaint is that all of the defendants were personally responsible because they condoned a policy which caused the computer disk to be placed in Childress's exit property.

Third, Childress's procedural due process claim is not precluded simply because there ultimately may have been a hearing on the revocation of Childress's MSR. The existence of post-deprivation remedies does not preclude a claim for pre-deprivation protections – and there were no pre-deprivation protections here.

Fourth, the Attorney General argues that leave to amend was properly denied, but she did not address the arguments that, under Rule 15(a) of the Federal Rules of Civil Procedure, Childress had a right to amend as a matter of course or that leave was proper under this Court's decision in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013). Instead, the Attorney General claims the district

court "decide[d] that any amendment would be futile," (Opp. Br. at 28), but that finds no support in the district court's opinion.

Fifth, the district court was required to consider Childress's motion to recruit counsel, and the Attorney General ignores Childress's threshold claim that the failure even to consider the motions to recruit counsel was error. Rather, the Attorney General speculates that the district court denied Childress's motion because the motions did not indicate counsel was necessary to aid with drafting or amending the complaint. Again, the record contradicts that speculation.

Sixth, qualified immunity does not apply, at least not at this stage of the case. Qualified immunity has not been asserted by any of the defendants and, as an affirmative defense, might be waived. Even if it had been asserted, the defense of qualified immunity should rarely, if ever, be resolved on a motion dismiss. In any event, Childress's allegations, which must be taken as true and liberally construed, adequately assert facts which overcome a qualified immunity defense, and the rights at the heart of Childress's complaint were clearly established at the time of the defendants' misconduct.

Finally, even though the Attorney General mislabels Childress as "civilly committed" (he is not), she rightly acknowledges that the district court correctly concluded that a person detained under the Sexually Violent Persons Commitment Act is not a "prisoner" for purposes of the Prison Litigation Reform Act.

The judgment of the district court should be reversed.

## **ARGUMENT**

## I.     Childress Stated A Claim By Alleging A Policy At BMRCC That Unconstitutionally Jeopardized His Freedom.

The Attorney General does not challenge that Childress adequately pleaded protectable interests under the Fourteenth Amendment or the Eighth Amendment. (*See* Appellant's Br. at 24-25, 36-37.) The Attorney General does, however, argue that the complaint was properly dismissed because Childress does not allege that any defendant acted with deliberate indifference and does not allege that every defendant (a) knew of Childress's MSR conditions and (b) placed the computer disk in Childress's property. The Attorney General's argument misapprehends the allegations and the law.

Childress states a claim that the administrators and staff at BMRCC violated his Fourteenth Amendment rights by maintaining a

policy that immediately jeopardized, and ultimately deprived him of, his liberty. Childress likewise states a claim that the administrators and staff at BMRCC violated his Eighth Amendment rights by acting with deliberate indifference to the risk that their actions would deprive Childress of his liberty after his custodial sentence had ended. While these claims may not have been artfully pleaded, or may ultimately fail after discovery, Childress adequately alleges, under oath, sufficient facts to state a claim.

### A. <u>Childress Adequately Pleaded That The Defendants Were Deliberately Indifferent To An Obvious Risk</u>.

The Attorney General dedicates a substantial portion of her brief to the claim that Childress does not adequately allege that any of the defendants were deliberately indifferent. (Opp. Br. at 12-19.) The Attorney General's position is not a fair construction of the *pro se* complaint or the governing law.

Childress adequately meets the pleading burden because he alleges, under oath, that the administrators and personnel of BMRCC maintained a policy of placing a concealed computer disk in the exit property of parolees, and that they did so knowing that possession of computer-related materials violates the conditions of the parolees' MSR.

(R. 49-50.) As this Court knows well, the "subjective standard" of deliberate indifference is satisfied if a plaintiff alleges "that the defendant 'acted with a sufficiently culpable state of mind,' something akin to recklessness." *E.g.*, *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (*quoting Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)). That is to say that a complaint states a claim if it alleges that an official "knows of a substantial risk of harm . . . and either acts or fails to act in disregard of that risk." *Arnett*, 658 F.3d at 751. Any question about the sufficiency of Childress's allegations is resolved by the admission from Warden Bates that, before Childress had his freedom stripped, the warden and others were conscious of similar instances when parolees were re-incarcerated solely for possessing the computer disk which the BMRCC personnel placed in the exit property. (R. 50.)

The Attorney General's attempt to downplay the significance of Warden Bates' confession is unavailing. The repeated argument about the weight and import of Bates' admission, (Opp. Br. at 16-18), ignores the proper deference afforded to a *pro se* complaint at the gate-keeping stage. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013); *Arnett*, 658 F.3d at 751. To that end, the suggestion that

-7-

Bates was referring to unknown parolees at some correctional center somewhere in Illinois, (Opp. Br. 16-17), is not reasonable. The allegations in Childress's complaint, including the allegations regarding Bates' admission, must be accepted as true and construed liberally. *See Luevano*, 722 F.3d at 1027; *Arnett,* 658 F.3d at 751.

Moreover, the Attorney General misconstrues the thrust of Bates' admission. Childress specifically alleged that "during the course of [a] conversational exchange" Bates openly admitted "knowledge, awareness, and forethought" that Bates and the others at BMRCC were aware of the risk of placing the disk in the inmates' property and that, on at least two other occasions, similarly situated parolees were found in violation of their MSR conditions because they also unknowingly possessed in their exit property the computer disks from the Lifestyle Redirection Program. (R. 49-50.) That admission is enough to state a claim of deliberate indifference; it reflects that there was a policy, about which Bates and the personnel at BMRCC were aware, that posed a substantial risk to Childress's freedom, but, in disregard of that risk, they failed to act.

Furthermore, the Court should reject the Attorney General's claim

that Childress did not adequately allege that the defendants knew that his MSR conditions prohibited the possession of computer-related materials. At a basic level, the Attorney General knows well, or it is at least a reasonable inference to draw in favor of a *pro se* litigant, that the defendants knew that there is an obvious danger that the prohibition on possessing computer-related material is a condition of MSR for any inmate at BMRCC. *See West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997) (ignoring a plainly obvious danger is actionable under Section 1983, "even [if] the defendant obtusely lacks actual knowledge of the danger") (emphasis omitted). That sort of condition is commonplace for inmates convicted of sex-related offenses, and "[s]ince 2010, sex offenders have composed more than half of Big Muddy's total population." *Monitoring Visit to Big Muddy River Correctional Center 2013*, John Howard Association of Illinois (last visited Oct. 31, 2014), http://thejha.org/sites/default/files/Big%20Muddy%20Correctional%20Center%20Report%202013.pdf; *accord Monitoring Tour of Big Muddy River Correctional Center*, July 28, 2010, John Howard Association of Illinois (last visited Oct. 31, 2014), http://thejha.org/sites/default/files/BIG%20MUDDY%20RIVER%20REP

ORT.pdf. The defendants also undoubtedly knew that Childress had

been housed at BMRCC as an active participant in the sex offender

program for more than five years, and it is a fair reading of the *pro se*

complaint that Childress alleges that each of the defendants knew, or

ignored an obvious danger, that the conditions of his release prohibited

him from possessing computer-related materials, (R. 47, 49-50). *See*

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (the test for

deliberate indifference under the Fourteenth Amendment is a

"conscious disregard of known or obvious dangers").

The Attorney General is not correct in her related claim that, even

if the risk was apparent, the Constitution did not require Bates (or any

other defendant, for that matter) to take any action. (Opp. Br. at 17-18.)

While the Attorney General rightly notes that "[a] prison official aware

of a substantial risk of harm is not required to take perfect action or

even reasonable action," (Opp. Br. at 17 (internal quotation omitted)),

the argument falters when she suggests that Bates was not

constitutionally-required to take any action. To the contrary, Bates had

ample reason to believe that action on his part was required to avoid a

substantial risk to Childress's liberty, because Childress alleges that

Bates and the others knew that at least two other inmates had fallen prey to the same policy and practice.[1] (R. 49-50.) Notwithstanding the Attorney General's efforts to confine an official's obligations, the Constitution compels an official who knows of a substantial risk to take action to eliminate it. *E.g.*, *Arnett*, 658 F.3d at 751; *Armstrong v. Squadrito*, 152 F.3d 564, 578 (7th Cir. 1998). Childress's allegations that the administrators and personnel had "knowledge, awareness, and forethought" of this serious risk of harm, (R. 50), are adequate to state a claim.

Finally, the Attorney General's attempt to downplay the degree of the risk of harm is similarly unpersuasive. While the Attorney General would prefer the Court to infer that there was no risk that Childress would actually leave BMRCC with the computer disk, (Opp. Br. 17-18), the reasonable inference is to the contrary, as they knew at least two others had left with the disk. The fact remains that Childress, having spent more than a decade in prison, was re-incarcerated merely for

---

[1]     The Attorney General's claim that "[t]here is no reason to believe that Bates had any connection with the [Lifestyle Redirection] Program or knew that the Program gave participants computer disks" is contradicted by the record. (R. 159 ("Assistant Warden of Programs Ty Bates [was a] hands on participant[] in the [L]ife Style Redirection Program, had a firsthand knowledge of the policies, practices, and procedures that were being implemented [*sic.*]").)

possessing an unmarked, sealed envelope containing a computer disk with his resume. Despite the Attorney General's efforts to blame Childress, (Opp. Br. at 18), the only reasonable inference from the facts is that he would have taken nearly any action to secure his liberty – certainly over any interest in a computer disk with his resume.

**B.**  **Childress Was Not Required To Allege That Every Defendant Physically Placed The Disk In Childress's Exit Property.**

The Attorney General mistakenly claims that, even if the defendants knew of Childress's MSR conditions, "there is no allegation that any of the [defendants] had any involvement with placing the disk in Childress's possession." (Opp. Br. at 13.) Based on that mistaken assertion, the Attorney General argues that a defendant who did not place the disk in Childress's possession could not have recklessly disregarded a known risk. (*Id.*)

First, as a factual matter, the fair construction of the complaint is that Childress alleges that all of the defendants were personally responsible for depriving Childress of his liberty interests because they either placed, or *condoned a policy which caused to be placed*, a

computer disk in his exit property in a sealed envelope. (R. 25-27, 48-50.)

Second, as a legal matter, the Attorney General too restrictively characterizes the deliberate indifference standard. "A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm . . . and either acts *or fails to act* in disregard of that risk." *Arnett*, 658 F.3d at 751 (emphasis added) (*citing Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). Any defendant who knew of the policy of placing the computer disk in the exit property, and knew that the policy posed a substantial risk to Childress's protected interests, but took no action to eliminate the obvious risk to those interests, would clearly run afoul of the Constitution. *See Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 455 (7th Cir. 2009); *Board*, 394 F.3d at 487. As a result, it is more than adequate that Childress alleges that the administrators were personally responsible for depriving Childress of his liberty interests because they knew of a substantial risk to Childress by virtue of the past deprivations, yet maintained a policy that disregarded that risk and took no action to eliminate that risk.

Finally, the Attorney General's claim that Childress does not state a claim for supervisory liability misperceives the law. (Opp. Br. 24-25.) A "supervisor" may be liable here because he or she knew of a substantial risk to Childress by virtue of the past deprivations, yet maintained a policy that disregarded that risk. *See Armstrong*, 152 F.3d at 580 (reversing summary judgment in favor of jail officials who personally participated in violation by failing to act in disregard of known risk of prolonged confinement). Or, a "supervisor" can be personally responsible for the deprivation of another's liberty by failing to adequately supervise the individual that caused the violation if such failure evinces a deliberate or reckless indifference to the rights of the plaintiff. *See Jones v. Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). In each case, the "supervisor" is personally responsible not because he or she is the principal of another, but rather because the supervisor participated in the violation by failing to act or failing to adequately supervise, if the failure to do so was reckless.

Once again, Childress adequately alleges that at least defendants Bates, Peyton, Winsor, and Eubanks knew that (i) BMRCC had a policy and practice of placing computer disks in unmarked, sealed envelopes

in the exit property of parolees and (ii) doing so would jeopardize and
ultimately deprive parolees, like Childress, of their liberty because they
were prohibited from possessing computer-related material. (R. 49-50;
Appellant's Br. at 31-32 (collecting authorities).) They also knew of
other liberty deprivations in similar circumstances. (*Id.*) The
defendants' knowledge of, but failure to act on, these repeated violations
is sufficient to state a claim.

## II.    The Existence Of Post-Deprivation Remedies Does Not Preclude A Procedural Due Process Claim For Pre-Deprivation Protections.

The Attorney General hinges her opposition to Childress's
procedural due process claim on the mistaken notion that the revocation
hearing was constitutionally adequate process. The Attorney General
cites *Lagerstrom v. Kingston*, 463 F.3d 621, 624-26 (7th Cir. 2006), for
the proposition that the "deprivation of liberty occurred when
[Childress's] MSR was revoked," and because his MSR was revoked
after a formal revocation hearing, there was no due process violation.
(Opp. Br. 20-21.) In essence, the Attorney General argues that the MSR
revocation hearing was the only process required. That argument
wrongly assumes that post-deprivation remedies preclude any claim for

-15-

pre-deprivation protections. *See Sonnleitner v. York*, 304 F.3d 704, 713 (7th Cir. 2002); *Chaney v. Suburban Bus Div. Rel'l Transp. Auth.*, 52 F.3d 623, 628 (7th Cir. 1995) (existence of post-deprivation remedies does not preclude claim for pre-deprivation protections where feasible and practical).

Contrary to the Attorney General's suggestion, *Lagerstrom* and *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999), do not doom the claim here because neither case involves an immediate loss of liberty and Childress is not asserting a claim that the revocation hearing was somehow insufficient. Admittedly, those cases preclude a procedural due process claim against a hearing officer if the plaintiff was given a formal disciplinary hearing, but those cases also distinguish between action that results in immediate loss of liberty, and a subsequent determination by a hearing committee. *Lagerstrom*, 463 F.3d at 623. In this case, Childress's procedural due process claim is against the administrators and personnel at BMRCC who caused an immediate loss of liberty, without any process, before any determination at a revocation hearing.

Cognizant that *Lagerstrom* and *McPherson* do not dispose of the claim, the Attorney General suggests that, under *Matthews v. Eldridge*, 424 U.S. 319 (1976), additional procedures would be "unnecessarily detrimental or burdensome to the prison and its programs." (Opp. Br. 22-23.) There is no basis in the record for the Attorney General's naked claims of "substantial burden," and, in any event, those are quintessential fact questions. *See Sonnleitner*, 304 F.3d at 713.

In the end, Childress alleges that his liberty interests were deprived as a result of the policy of the administrators and personnel of BMRCC – without any process whatsoever. That Childress at some point might have received a hearing is of no consequence; the post-deprivation remedy alone does not mandate that no other process was due. The other fact questions argued by the Attorney General about what would have constituted adequate process, or the extent of the risks in the absence of any process, are not issues which should be resolved by the district court in its gate-keeping function.

## III. Leave To Amend Was Required, And The District Court Made No Findings To Justify Its Decision Not To Afford Leave To Amend.

As an initial matter, the Attorney General does not address the argument that, under Rule 15(a) of the Federal Rules of Civil Procedure, Childress had a right to amend as a matter of course. (Appellant's Br. at 39.)

Likewise, the Attorney General ignores this Court's controlling decision in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013). (Appellant's Br. at 38.) Not surprisingly, even though the Attorney General disregards the decision, district courts continue to heed the *Luevano* Court's direction that an *in forma pauperis* plaintiff should always be granted an opportunity to amend where leave would be granted to a fee-paying plaintiff. *E.g.*, *Lundeen v. Rhoad*, 991 F. Supp. 2d 1008, 1022 (S.D. Ind. 2014) (dismissed complaint of pro se litigant with leave to amend citing *Luevano*). Both Rule 15(a) and *Luevano* dictate that the judgment should be reversed.

Rather than tackle these arguments, the Attorney General recites the familiar buzzwords for denying leave (bad faith, futility, etc.) and imagines that "it was not unreasonable for the [district] court to decide

that any 'amendment would be futile.'" (Opp. Br. at 28.) But, that is not what the district court found: Nowhere in the district court's opinion is there any suggestion that Childress's claims were frivolous or malicious or that amendment would be futile. (Appx. 7-14.) Simply put, the sole basis on which the Attorney General defends the district court's judgment is without any support in the record. In the absence of any finding of frivolousness, bad faith, or futility, inadequate complaints dismissed under the Section 1915(e)(2) should not be dismissed without leave to amend, and the judgment of the district court should be reversed.

## IV.  The Failure To Consider The Requests To Recruit Counsel Was Error.

The Attorney General avoids Childress's threshold claim that the failure even to consider the motions to recruit counsel was error, (Appellant's Br. at 41), and theorizes that the district court "reasonably denied" Childress's motions to recruit counsel because the motions "alone did not give the [district] court a sufficient basis to believe that counsel was necessary to aid with drafting or amending Childress's complaint." (Opp. Br. 29-30.) The Attorney General's theory is flawed.

The Attorney General is forced to speculate about what the district court considered because the district court made no findings whatsoever, contrary to this Court's dictates. *E.g.*, *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). More significant, the speculation is contradicted by the record: Childress asserts in his motions to recruit counsel that "[a] trained attorney would ammend [*sic.*]" the complaint and would "properly investigate and research" the case. (R. 74, 76.) The district court had ample basis to believe counsel was necessary and should have considered the request.

The Attorney General's defense of the district court is somewhat curious because she does not challenge the facts presented by Childress. The Attorney General does not challenge that Childress's claims are complex, or that Childress was without an adequate law library, (R. 76), or that he is physically disabled, (R. 35). Nor does she challenge that Childress was moved three times following his detention, (R. 49). The Attorney General also does not challenge that counsel could have a made a difference. (*See* Appellant's Br. at 42.)

This Court has made clear that, while every litigant is not entitled to counsel in civil litigation, courts should seriously consider any

request for counsel under the dictates set forth in *Pruitt* and its progeny. *E.g.*, *Junior v. Anderson*, 724 F.3d 812, 816 (7th Cir. 2013). There is no indication in the record that the district court gave any consideration to the motions, and the failure to do so was error. Counsel would have made a difference, and the judgment should be reversed.

## V.  The Affirmative Defense Of Qualified Immunity Does Not Apply.

The Attorney General argues that, "[e]ven if Childress's allegations stated a claim for relief," the personnel at BMRCC were entitled to qualified immunity. (Opp. Br. at 26.) The Attorney General claims qualified immunity by narrowly defining the right at issue – "an inmate's right to be free from having material placed into his exit property if possession of the material violates the conditions of the inmate's MSR" – and by claiming that right is not clearly established.

At this stage, the defense of qualified immunity is premature. Qualified immunity is an affirmative defense, which can be waived, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090-91 (7th Cir. 2008), and the defendants might do so. At the very least, they are not entitled to a presumption in their favor, particularly given the Attorney General's

efforts to make clear she does not speak for or represent the defendants. (Opp. Br. at 1.)

Moreover, qualified immunity should not be considered here given that the case was dismissed under the district court's gate-keeping function. There is, at best, an open question about the propriety of considering qualified immunity at the dismissal stage. *See Jacobs v. City of Chicago*, 215 F.3d 758, 774-76 (7th Cir. 2000) (Easterbrook, J. concurring) (explaining why qualified immunity should not be addressed at the dismissal stage); *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."). In any event, Childress adequately alleges (a) a right to be free from the conduct at issue, (b) that the actions of the defendants were deliberately indifferent to his rights, and (c) that the conduct at issue was so egregious that no reasonable person could have believed that it would not violate clearly established rights. (R. 49-50.) The allegations in Childress's complaint are taken as true and liberally construed, and,

accordingly, are more than adequate at this point to overcome a claim for qualified immunity. *See Jacobs*, 215 F.3d at 771; *Alvarado*, 267 F.3d at 651.

Moreover, the constitutional rights at issue were clearly established. Qualified immunity gives "public officials the benefit of legal doubts by relieving them from having to decide, at their financial peril, how judges will decide future cases." *Valance v. Wisel*, 110 F.3d 1269, 1280 (7th Cir. 1997); *see Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008) (qualified immunity protects officials from mistaken judgments in high pressure and high risk situations). There were no legal doubts here, and the Attorney General does not confront the cases cited by Childress demonstrating that the grant of MSR, as well as the release on MSR itself, independently gave rise to a liberty interest protected by the Due Process Clause. (Appellant's Br. at 24-25 (citing cases recognizing the rights before August 2010).) Nor does the Attorney General confront any of the cases cited in Childress's brief demonstrating the established right under the Eighth Amendment that is violated when an individual is detained in prison longer than he or she should have been "due to the deliberate indifference and delay" of

prison officials. (Appellant's Br. at 36 (citing cases recognizing the rights before August 2010); *see Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006).) Those authorities are sufficient to demonstrate that the rights at issue were clearly established. *See Auriemma v. Rice*, 910 F.2d 1449, 1456 (7th Cir. 1990) (plaintiff need not show the "very action in question" has previously been held to be unlawful).

Nevertheless, the Attorney General chides Childress for not identifying any fact-specific authority based on her hyper-narrow characterization of the rights at issue. (*See* Opp. Br. at 26.) However, the *sine qua non* of qualified immunity is notice, not a previous decision. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Board*, 394 F.3d at 477. That is because "the easiest cases [for liability] don't even arise." *Alexander v. Deangelo*, 329 F.3d 912, 919 (7th Cir. 2003). To that end, to avoid qualified immunity, a plaintiff is not required to identify a case that is "precisely on all fours on the facts and the law involved," *Landstrom v. Illinois Dep't of Children and Family Servs.*, 892 F.2d 670, 676 (7th Cir. 1990), particularly if the constitutional violation is obvious. *Eberhardt v. O'Malley*, 17 F.3d 1023, 1028 (7th Cir. 1994) ("This is such an elementary violation of the First Amendment that the

absence of a reported case with similar facts demonstrates nothing more than widespread compliance with well-recognized constitutional principles."). Here, given the decisions identifying the liberty interest in the grant of MSR and the actual "release," as well as the right not to be detained in prison longer than he should have been, the administrators and personnel at BMRCC were on notice that the Constitution forbade them from maintaining a policy that abridges Childress's freedom.

Finally, qualified immunity does not apply because Childress's complaint adequately alleges that that the conduct at issue is "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (*quoting Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)). Again, the purpose of qualified immunity "is to shield officials from harassment, distraction and liability when they perform their duties *reasonably*." *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009) (emphasis added). Qualified immunity is not available, however, where a reasonable person would expect that the conduct is not constitutionally permissible. *See id.* at 701; *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006)

(qualified immunity does not apply "if it would have been clear to a reasonable police officer that . . . her conduct violated a constitutional right"). Childress alleges that the administrators and personnel of BMRCC did not perform their duties reasonably and, indeed, performed their duties knowing that they were jeopardizing Childress's freedom. The unreasonableness of the alleged conduct is apparent with the appreciation that, at the time they violated Childress's rights, the personnel of BMRCC were aware of similar instances when parolees were re-incarcerated solely for possessing the computer disk which the BMRCC personnel placed in their exit property.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully Submitted,

CRAIG A. CHILDRESS

By: /s/    Scott J. Fisher
     One of His Attorneys

Scott J. Fisher
Eric Y. Choi
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Phone: (312) 269-8000

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,045 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 and has 14-point Century Schoolbook font.


Date: November 3, 2014                  /s/  Scott J. Fisher
                                        Scott J. Fisher

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: November 3, 2014          <u>/s/  Scott J. Fisher</u>
                                    Scott J. Fisher

2208159.2